**TEXAS UNEMPLOYMENT COMPENSATION COMMISSION et al. v. CAMPBELL, WISE & WRIGHT, Inc., et al.**

**No. 10414.**

Court of Civil Appeals of Texas.
San Antonio.

July 13, 1938.

Rehearing Denied Aug. 31, 1938.

William McCraw, J. W. Peavy, and Everett L. Looney, all of Austin, for appellants.

W. E. Pope, A. J. Pope, and Seale & Wood, all of Corpus Christi, for appellees.

SLATTON, Justice.

The 117th District Court of Nueces County, on the 10th day of February, 1938, at the instance of the appellees, without notice and hearing, enjoined Texas Unemployment Compensation Commission, Orville S. Carpenter, C. R. Miller, and Patrick Moreland, individually and as members of the Texas Unemployment Compensation Commission, its members, agents, employees, auditors, collectors and representatives, from doing any act of any kind to force or require the appellees to pay any taxes, penalties or interest by reason of the operations set out in their petition, and asserted by the appellants to be due under what is known as the Texas Unemployment Compensation Commission Act, Vernon's Ann.Civ.St. art. 5221b—1 et seq.; and from

in any manner using the private records of the appellees. A bond in the sum of $1000 was required and given.

The Texas Unemployment Compensation Commission, and Orville S. Carpenter, C. R. Miller and Patrick Moreland, as members of the Commission, on March 2nd, 1938, filed a transcript of the record in this Court. Upon application of the appellants the cause has been advanced by this Court.

Briefly stated, the appellees, fifty-seven in number, alleging themselves to be engaged in the business of shipping vegetables and fruit, brought this suit for themselves and all others similarly situated, whether named or not. Their petition is quite lengthy, but it may be summarized as presenting three propositions: First, that the Texas Unemployment Compensation Act is unconstitutional, as being violative of both the State and Federal constitutions; second, that the employees of appellees are engaged in agricultural labor within the meaning of the Act, and therefore, are exempt from its provisions; third, that the employees of the appellees are independent contractors within the meaning of the Act and, therefore, are exempt from its provisions.

They allege four groups of persons working in conection with their business, classified as follows: First, office workers, clerical, etc.; second, crate and container makers; third, harvesters; and fourth, shed or platform workers. At the head of each group of workers appellees place some responsible person who performs his work under contracts with appellees, under the terms of which such person hires such laborers as he desires, pays them, and exercises sole and exclusive control over them.

It is alleged that appellees sometimes buy the growing crop after it has matured, and sometimes they furnish seed to the farmer, for which they receive an interest in the crop when matured.

It is averred that the Commission, its members and employees are demanding of the appellees that they each pay the tax on each person working for them, regardless of the nature of the employment; and appellants' employees are examining the books kept by appellees to determine the amount of compensation paid for harvesting fruits and vegetables.

It is alleged that the tax required of employers under the Texas Unemployment Compensation Act has been paid, under protest, on all persons working in the offices, in the sheds, on the platform, and in the fields, notwithstanding the fact that said workers were independent contractors, who were employers within the meaning of and subject to the Act.

It is further averred that the Act is unconstitutional and that the appellees have actually paid the tax on all such workers and are entitled to recover for such payments. And that the rights of a large number of persons are involved, the individual loss and damage is great and the relief prayed for is necessary for the prevention of a multiplicity of suits.

The prayer is that the defendants (appellants) be enjoined and restrained from doing any act of any kind to force or require plaintiffs (appellees), or others similarly situated to pay any additional taxes, penalties or interest; and from in any manner using the private records of plaintiffs (appellees); and from collecting taxes, penalties or interest; and for judgment for all taxes, penalties and interest already paid; and for temporary and permanent injunction.

The Texas Unemployment Compensation Law (Acts 1936, 44th Legislature, 3rd Called Session, p. 1993, Ch. 482, as amended Acts 1937, 45th Legislature, c. 67, Vernon's Ann.Civ.St. art. 5221b—1 et seq.), provides for contributions and establishes a means by which payments may be enforced.

Section 7, Vernon's Ann.Civ.St. art. 5221b—5, entitled "Contributions," levies the tax and fixes the amount.

Section 11, Vernon's Ann.Civ.St. art. 5221b—9, entitled "Administration," subsection (a), makes it "the duty of the Commission to administer this Act" and authorizes it to "require such reports * * * as it deems necessary or suitable to that end."

Section 11, subsection (e), Vernon's Ann. Civ.St. art. 5221b—9(e), relating to records and reports, provides: "Each employing unit shall keep true and accurate employment records, containing such information as the Commission may prescribe and which is deemed necessary to the proper administration of this Act. * * * The Commission may require from any employing unit any sworn or unsworn reports, with respect to persons employed by it, which the Commission deems necessary for the effective administration of this Act * * *."

Section 19, subsection (e), Vernon's Ann. Civ.St. art. 5221b—17(e), makes any employer of one or more an "employing unit."

Section 11, subsection (g), Vernon's Ann. Civ.St. art. 5221b—9(g), authorizes the Commission to institute contempt proceedings in any county or district court against any person who fails to appear or produce papers, *if it is in his power so to do.*

Section 14, Vernon's Ann.Civ.St. art. 5221b—12, entitled "Collection of Contributions," subsection (a), provides that past due contributions "shall bear interest at the rate of one (1%) per centum per month."

Section 14, subsection (b), provides in part as follows: "If, after due notice, any employer defaults in any payment of contributions or interest thereon, the amount due shall be collected by civil action in the name of the State and the Attorney General, and the employer adjudged in default shall pay the costs of such action."

Section 16, Vernon's Ann.Civ.St. art. 5221b—14, entitled "Penalties," subsection (b) provides: "Any employing unit * * who makes a false statement or representation knowing it to be false, or who knowingly fails to disclose a material fact, to prevent or reduce the payment of benefits to any individual entitled thereto, or to avoid becoming or remaining subject hereto or to avoid or reduce any contribution or other payment required from an employing unit under this Act, or who willfully fails or refuses to make any such contributions or other payment or to furnish any reports required hereunder or to produce or permit the inspection or copying of records as required hereunder, shall be punished by a fine of not less than Twenty ($20.-00) Dollars, nor more than Two Hundred ($200.00) Dollars, or by imprisonment for not longer than sixty (60) days, or by both such fine and imprisonment; and each such false statement or representation or failure to disclose a material fact, and each day of such failure or refusal shall constitute a separate offense."

Section 16, subsection (c), is as follows: "Any person who shall willfully violate any provision of this Act or any rule or regulation thereunder, the violation of which is made unlawful or the observance of which is required under the terms of this Act, and for which a penalty is neither prescribed herein nor provided by any other applicable statute, shall be punished by a fine of not less than Twenty ($20.00) Dollars, nor more than Two Hundred ($200.00) Dollars, or by imprisonment for not longer than sixty (60) days, or by both such fine and imprisonment, and each day such violation continues shall be deemed to be a separate offense."

It is contended, in effect, by the appellants, that the temporary injunction issued by the trial court is unlawful for two reasons: first, that the petition does not allege facts to show that the enforcement of the law by the Commission will result in some injury to the appellees which cannot be avoided in the ordinary course of legal procedure; and second, that the trial court did not have jurisdiction to entertain this suit and grant the temporary injunction to stay proceedings under the Texas Unemployment Compensation Act for the collection of taxes, because this is a suit against the State, and without an allegation of consent upon the part of the State the trial court had not jurisdiction to issue the temporary injunction.

The appellees contend, in effect, that the temporary injunction was properly issued upon their verified application which sought to enjoin State officers, in their official capacity and individually, from proceeding under a statute claimed to be unconstitutional to collect an alleged tax, because this suit would avoid a multiplicity of suits.

It is further contended by the appellees that the trial court properly issued the injunction because under their pleadings they alleged that the state officers, in their official capacities and individually, were acting in excess of statutory authority, and therefore without authority, and that such action upon the part of said officers was interfering with the property rights of the complainants, and also because this action avoids a multiplicity of suits.

It is an ancient rule of equity that an injunction will not lie where the complainant has an adequate remedy at law. In Texas adequate remedy at law has been defined as a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as a remedy in equity. Nagy v. Bennett, Tex.Civ.App., 24 S.W.2d 778; Cook v. Panhandle Refining Co., Tex.Civ. App., 267 S.W. 1070.

Some of the cases hold that the legal remedy must afford relief as full and complete as injunction would afford. Summer

v. Crawford, 91 Tex. 129, 41 S.W. 994; Id., Tex.Civ.App., 41 S.W. 825.

It has been held that such legal remedy need not be so speedy. Simms v. Southern Pipe Line Co., Tex.Civ.App., 195 S.W. 283, error refused.

■ In the leading case of Texas & Pacific Railway Company v. Stephens, Tex. Civ.App., 93 S.W. 436; Stephens v. Texas & P. R. Co., 100 Tex. 177, 97 S.W. 309, it is said (page 310): "There is no conflict in the authorities upon the proposition that the unconstitutionality of a statute will not of itself authorize the issuing of an injunction to stay proceedings under it for the collection of taxes. There must be a state of facts showing that the enforcement of the law by the officers will result in some injury which cannot be avoided in the ordinary course of legal procedure."

In that case there was involved the constitutionality of an Act of the Legislature passed in 1905, which provides for the levy, assessment, and collection of a tax on the gross receipts of railroads. The full context of the Act appears on pages 441 and 442, Vol. 93 S.W. included in the opinion of the Honorable Court of Civil Appeals.

Section 1 of the Act (Acts 1905, c. 141) levied an annual tax equal to 1% of the gross receipts. By Section 2 it was provided that an annual report be made, under oath, and "the Comptroller shall have power to require such other reports and affidavits as may in his judgment be necessary to protect the interests of the State, and he shall estimate such tax on the true gross receipts thereby disclosed, and assess and enforce the collection of such tax."

By Section 3 the failure to make reports required by the act or by the Comptroller is made a misdemeanor, punishable by a fine in any sum not less than One Hundred Dollars nor more than Five Hundred Dollars, and providing that each day of failure or refusal shall constitute a separate offense.

By Section 4, failure to make the report and to pay the tax at the time fixed incurs a penalty of ten per centum upon the amount of the tax, and if such failure shall continue for thirty days an additional penalty of $200 is incurred for each day any of said reports or payments may be delayed after such thirty days.

By Section 5, the Attorney General is authorized and required, upon request by the Comptroller, to bring suit in the name of the State in Travis County against the proper parties defendant to recover taxes, penalties and forfeitures.

Suits were brought in the District Court of Travis County by a number of railroads against John W. Stephens and others. The suits were against the Attorney General, the Comptroller, and the Treasurer, and had for their purpose the enjoining of them from taking any action in the matter of estimating, assessing or attempting to enforce the collection of a certain tax known as the "Gross Receipts Tax Bill." The complainants in those suits attacked the Act as unconstitutional upon sundry grounds. They averred that by reason of the provisions of said bill, which required the Comptroller to enforce the collection of the tax and penalties for the nonpayment thereof, there would result a multiplicity of suits from such attempted enforcement, the cost and expense of which would amount to large sums of money, and the bringing to trial of the same would entail further injuries upon the parties claimed to be subject to such tax.

In the trial court the State officers set up by plea that the suit was against the State, which plea was by the trial court overruled. The State officers demurred to the petition and upon such demurrers the trial court held that the act was constitutional, sustained the demurrers and dismissed the bills. The Railroad Companies appealed and the appellees cross-assigned as error the refusal of the trial court to sustain their plea to the jurisdiction on the ground that the suit was against the State. The Honorable Court of Civil Appeals sustained the trial court in holding that the suit was not against the State, but reversed the trial court wherein it held the act to be constitutional, and rendered judgment for the plaintiffs, permanently enjoining the State officers from proceeding under the act.

The Supreme Court granted writ of error and reversed the Court of Civil Appeals and affirmed the judgment of the trial court; but in doing so the Supreme Court did not pass upon the constitutionality of the law.

Upon the question which we think decisive in this case, the Honorable Supreme Court in that opinion say: "John W. Stephens, as Comptroller of the State, has neither, under the law * * * which levied the tax in controversy, nor under

any general law of the state, authority to do anything in this matter, except, when the railroads reported their gross receipts, it was his duty, if the reports were not satisfactory, to call for additional reports, but he had no power to enforce that demand. It is true that a refusal to comply with the call for additional reports would subject the taxpayer under the law to penalties, which, however, could only be enforced through a suit in the courts by regular trial. * * * We are unable to see how there would result any injury to the taxpayer from a proceeding by the Comptroller in this respect. He neither has authority to enforce the law himself by seizure of their property, nor could the person to whom he was to certify the assessment proceed in any such manner. It seems clear that the action of the Comptroller in obedience to the law of the state could not have put the taxpayer in any position where it would suffer in its property any injury whatever."

As to the power of the Attorney General, the Honorable Court say: "He had no power whatever to use any means to enforce the collection of the tax or the penalties except by regular proceedings in the courts, where the taxpayer would be notified and have its day in court before condemnation. Hence, in the intended action of the Attorney General there was neither a present act which infringed upon the rights of the taxpayer nor a threat on his part to take any proceedings which would deprive the corporation of a right to be heard or that would inflict an injury upon it."

In disposing of the contention that the granting of injunctive relief would avoid a multiplicity of suits, the Court say: "It is alleged in the petition that the effort of the Comptroller to collect the tax and penalties would result in a multiplicity of suits, but how this could be possible is not alleged, nor shown by the facts set up in the petition. The state could bring but one suit against each taxpayer for the tax and penalties due by it or him, and in that suit could and should be embraced all the taxes and penalties which had accrued up to the time of the rendition of the judgment, so that there need be but one suit in each case. * * * It is plain that there was no ground for the allegation that the enforcement of the law would involve a multiplicity of suits. * * * The injunction should

have been denied because there was an adequate remedy at law."

We can see no material difference in the claims made by the complainants in this suit and the claims made by the complainants in the Stephens Case, supra. Therefore, we are of the opinion that that case is decisive of this case, and because the complainants in the present case have an adequate legal remedy in the defense of whatever action the State officers may take against them in the courts. This being true, it is our opinion that the action of the court in issuing a temporary injunction, particularly without notice and hearing, was erroneous, and that his action in so doing should be here reversed, and the injunction dissolved. It is so ordered.