No. 33,961

The Capitol Building and Loan Association, The Aetna Building and Loan Association, and The Home Savings and Loan Association, *Plaintiffs*, v. Kansas Commission of Labor and Industry, Frank O'Brien, James Malone and G. E. Blakely, Individually and as Members of Said Commission, *Defendants*.

(83 P. 2d 106)

Opinion filed October 8, 1938.

*John S. Dean, Jr.,* and *Mark L. Bennett,* both of Topeka, for the plaintiffs.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Clark H. McPherson,* of Topeka, for the defendants.

The opinion of the court was delivered by

Dawson, C. J.: This is an original action in mandamus to determine the question whether the plaintiffs are exempted from making contributions to the unemployment compensation fund created by the statute of 1937. (Laws of 1937, ch. 255, G. S. 1937 Supp., 44-701 *et seq.*) This statute was enacted to articulate with certain acts of Congress, the federal home loan bank act, 12 U. S. C. A., p. 962 *et seq.,* and the federal social security act, 40-42 U. S. C. A. (Supp.), p. 126 *et seq.* Another Kansas statute to be considered is chapter 143 of the Laws of 1933, G. S. 1935, 17-10a01, which authorizes building and loan associations to subscribe for the stock of a federal home loan bank and thus become members of its corporate entity.

Except as exempted by the terms of our local statute, every employer of eight or more persons for as much as twenty weeks per calendar year is required to make contributions to an unemploy-

ment compensation fund calculated upon a specified percentage of the wages paid to his employees. The fund thus provided is administered by the unemployment compensation division of the Commission of Labor and Industry, the official personnel of which are the defendants named in this action.

Section 3 of the statute, G. S. 1937 Supp., 44-703, subparagraph (i), in part reads:

". . . The term 'employment' shall not include . . . (2) Service performed in the employ . . . of the United States government, or of an instrumentality . . . of the United States . . ."

Plaintiffs herein are Kansas corporations duly organized and operating as building and loan associations. All three of them have exercised the privilege of subscribing for shares of the capital stock of the Federal Home Loan Bank of Topeka, which is admittedly a federal instrumentality. (*Smith v. Kansas City Title Co.*, 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577; *Federal Land Bank v. Priddy*, 295 U. S. 229, 55 S. Ct. 705, 79 L. Ed. 1408.)

Plaintiffs contend that by virtue of their stock ownership in this federal instrumentality and their consequent membership in its corporate entity they themselves are likewise federal instrumentalities, and under the terms of our local statute quoted above they, too, are exempt from the making of contributions to the unemployment compensation fund.

The defendant commission of labor and industry declines to accept plaintiffs' construction of the statute and insists upon their contributing to the unemployment compensation fund in conformity with the percentage rates which employers of individuals in general are required to pay.

At the outset, we think it clear that in the enactment of our statute of 1937 the legislature had no thought of enlarging the existing exemptions from state taxation which were and are the right and privilege of federal instrumentalities. The statutory provision concerning exemption of federal instrumentalities from taxation was merely declaratory of existing law, for certainly if that statutory declaration of exemptions had been omitted entirely, any and all federal instrumentalities would ordinarily have been exempted from state taxation except as federal legislation might expressly permit it, as in the familiar instance of state taxation of national banks. (*Owensboro National Bank v. Owensboro*, 173 U. S. 664; *Bank v. Geary County*, 102 Kan. 334, 339-341, 170 Pac. 33.) See, also, *Railroad Company v. Peniston*, 85 U. S. (18 Wall.) 5.

Does an ordinary building and loan association organized under Kansas corporation law actually become a federal instrumentality from the mere fact that it acquires five or more shares of stock in a federal home loan bank, and to that extent becomes a member of the corporate entity of the latter institution?

On behalf of plaintiffs, their counsel argue that by precedent and analogy an affirmative answer to this question is required.

Looking first into the authorities relied on to support plaintiffs' contention, we note that on February 1, 1937, the internal revenue department promulgated a rule to guide its revenue collectors and all concerned with the affairs of that department. As quoted in plaintiffs' brief it reads:

"Building and loan associations, savings and loan associations, coöperative banks, homestead associations, insurance companies and savings banks chartered by the various states which are members of the federal home loan bank system are instrumentalities of the United States within the above-stated rule and that services performed by individuals in their employ come within the exception extended by sections 811 (b) (6) and 907 (c) (5) of the social security act. The organizations and their employees are not, therefore, subject to the taxes imposed by titles VIII and IX of the social security act."

It may readily be admitted that the federal revenue department is staffed with competent lawyers, and that the department's opinions are entitled to respect and consideration; but those opinions are *ex parte* opinions and do not have the convincing weight of adjudications arrived at in sharply contested judicial proceedings. In our often quoted case of *Harrison v. Benefit Society*, 61 Kan. 134, 59 Pac. 266, where the power and duty of the clerk of this court to collect certain fees from litigants was called in question, we said:

"In all cases of ambiguity of statutes, the contemporaneous construction of the legislative and executive departments, and of the officials whose duty it is to carry the laws into effect, will be allowed great and, oftentimes, determining weight." (Syl. ¶ 2.)

In promulgating its rule quoted above, the federal revenue department was considering the matter of exemptions from the payment of taxes under the federal act, so it cannot be said that its interpretation of the federal law is authoritative in the interpretation of our local statute, although it is entitled to careful consideration for two good reasons, *first,* because of the probability that the federal ruling is correct, although not the result of a contested lawsuit, and *second,* because of the desirability that the interpretation of state and federal statutes should be harmonious and free from inconsistency wherever practicable.

But the diligence of counsel for the defendant commission has unearthed and submitted for our further instruction the opinions of various other public officials whose duty it has also been to consider the general subject with which we are presently concerned. These include official opinions of the attorney general of Missouri, dated March 10, 1938, and of the attorney general of North Carolina, dated December 11, 1937. Of equal significance is another opinion which appears in the appendix of defendants' brief—that of the general counsel for the Social Security Board, dated December 21, 1937, some ten months subsequent to that of the federal revenue department quoted above. Reduced to a sentence, this opinion, as well as those of the attorneys general we have perused, holds that building and loan associations and similar financial institutions do not become instrumentalities of the federal government so as to exempt them from contributing to the various state unemployment compensation funds from the mere fact of their acquisition of stock ownership and consequent membership in the corporate entity of a federal home loan bank which is itself an instrumentality of the United States and is itself exempt from such state taxation.

Counsel for plaintiffs also cite for our consideration certain cases where prosecutions and convictions under federal criminal laws have been sustained against officers or employees of state corporations on the ground that such corporations were instrumentalities of the federal government. We would agree that if the state corporation was actually performing a substantial service for the federal government, and if the performance of that service was or might be impaired in any appreciable degree by the delinquency of the officer or employee of the state corporation, a federal prosecution could be maintained, as indeed, of course, a state prosecution could likewise be maintained, for it is altogether possible for a single misdeed to be a crime against the United States and likewise a crime against the state where the misdeed was perpetrated. (*Fox v. The State of Ohio*, 46 U. S. [5 How.] 410; *The United States v. Marigold*, 50 U. S. [9 How.] 560, 569; *United States v. Lanza*, 260 U. S. 377, 43 S. Ct. 141, 67 L. Ed. 314.) It is also quite understandable that the delinquency of an officer or employee of a state corporation might materially affect its capacity to perform some duty for the federal government with which it was charged. Instances of that sort were *Westfall v. United States*, 20 F. 2d 604, 274 U. S. 256, 47 S. Ct. 629, 71 L. Ed.

1036; *Hiatt v. United States*, 4 F. 2d 374; *Doherty v. United States*, 94 F. 2d 495.

In the Westfall case, a state bank in Michigan had become a member of the Federal Reserve System. One Himmell was its manager. He and Westfall made an arrangement whereby certain drafts, notes and checks of Westfall were carried as cash items in the state bank, to the amount of $9,650. To deceive the examiners who were about to visit the bank a certificate of deposit for $10,000, for which nothing was paid, was issued to Westfall and deposited in the bank by him as collateral to this large amount of items carried as cash. The pertinent federal statute which was held to cover his offense provided that state banks "and the officers, agents and employees thereof shall be subject . . . to the penalties prescribed by section 5209 of the Revised Statutes." The conviction did not rest on any mere judicial deduction that the state bank in Michigan was a federal instrumentality, whether such was the fact or not. It rested on the plain violation of a penal statute enacted by congress for the protection of the Federal Reserve System.

In *Hiatt v. United States*, the defendant was president of the Dickinson Trust Company, an Indiana corporation, which was a member of the Federal Reserve System. He was indicted in the federal court for a number of penal offenses, a typical one of which charged him with making a false entry in a report of his corporation to the Federal Reserve Bank in Chicago. As in the Westfall case, Hiatt's conviction was affirmed on the simple ground that his offense was clearly a violation of the federal statute. (12 U. S. C. A., § 592.)

In *Doherty v. United States*, 94 F. 2d 495, Doherty was convicted of embezzling funds from the Bank of Paxton, a Nebraska corporation, which was insured under the Federal Deposit Insurance Corporation, and of misapplying the bank's funds, and of making false entries on the bank's records. The Bank of Paxton was not a member of the Federal Reserve System. As in the Westfall and Hiatt cases, his conviction for breach of the federal penal statute was affirmed. But here again it was held, quite properly we think, that the federal statute clearly covered the offenses charged against him. See, also, an earlier chapter in the same case in 18 F. Supp. 793.

Another criminal case was *Weir v. United States*, 92 F. 2d 634, where appellants were convicted in the federal court on indictments charging them with embezzlement of the funds of three state banks which were insured in the Federal Deposit Insurance Corporation

·and of falsifying their banks' reports to that company. In affirming the judgments against appellants, the circuit court of appeals re-ferred to the Westfall and Hiatt cases and continued thus:

"From Mr. Justice Holmes' reasoning, it follows quite logically that if a state bank chooses to become an insured bank and thus to obtain and enjoy the benefits of deposit insurance furnished by the government through its agency created by congress, it thereby submits itself to the penalties for violation of the law creating the benefits. The statute making such violations punishable evidently had for its intent the preservation of the Federal Deposit Insurance Corporation without loss. Congress recognized that every such fraud weakens the Insurance Corporation, and thereby, the federal system and scheme." (p. 637.)

We think there is no helpful analogy between these criminal cases and the one with which we are presently concerned.

Looking next into some of the civil cases cited by plaintiffs, our attention is directed to *Clallam County v. United States,* 263 U. S. 341, 44 S. Ct. 121, 68 L. Ed. 328. In 1918, at the instance of the federal director of aircraft production, a corporation was organized under the laws of the state of Washington, entitled "The United States Spruce Production Corporation." The federal government conveyed to it certain lands and other property. The government subscribed for all its corporate stock except the requisite qualifying shares for the corporation's trustees. All the corporation's activities were devoted to the production of aircraft materials for the prosecution of the war with Germany. The taxing authorities of Clallam county, Washington, imposed taxes on the corporation's properties situated within their bailiwick. The litigation which ensued was conducted on behalf of the corporation by the legal department of the federal government. The federal district court ruled against the county taxing officials, and the case went to the circuit court of appeals, which certified it to the supreme court to obtain an authoritative answer to the main question—whether the property of the corporation was subject to state taxation upon the submitted facts, about which there was no dispute. The supreme court held that the corporation's property was not taxable under the state laws of Washington. Excerpts from the opinion of Mr. Justice Holmes read:

·  "In short, the Spruce Production Corporation was organized by the United States as an instrumentality for carrying on the war, all its property was conveyed to it by or bought with money coming from the United States and was used by it solely as means to that end. . . Upon these facts immunity is claimed from taxation by a state.

"The immunity is claimed under the constitution of the United States. . .

"The state claims the right to tax on the ground that taxation of the agency may be taxation of the means employed by the government and invalid upon admitted grounds, but that taxation of the property of the agent is not taxation of the means. We agree that it 'is not always, or generally, taxation of the means,' as said by Chief Justice Chase in *Thompson v. Pacific Railroad,* 9 Wall. 579, 591. But it may be, and in our opinion clearly is, when as here not only the agent was created but all the agent's property was acquired and used, for the sole purpose of producing a weapon for the war. *This is not like the case of a corporation having its own purposes as well as those of the United States and interested in profit on its own account.* The incorporation and formal erection of a new personality was only for the convenience of the United States to carry out its ends. It is unnecessary to consider whether the fact that the United States owned all the stock and furnished all the property to the corporation taken by itself would be enough to bring the case within the policy of the rule that exempts property of the United States. (*Van Brocklin v. Tennessee,* 117 U. S. 151.) *It may be that if the United States saw fit to avail itself of machinery furnished by the state it would not escape the tax on that ground alone.* But when we add the facts that we have recited we think it too plain for further argument that the tax could not be imposed." (pp. 344, 345.) (Italics ours.)

We do not discern any analogy between the Clallam county case and the one at bar.

Another case cited for our consideration is *N. Y., ex rel. Rogers, v. Graves,* 299 U. S. 401, 57 S. Ct. 269, 81 L. Ed. 306. There, too, a railroad corporation had been created by the laws of New York. Its corporate purposes were the construction and operation of a railroad across the Isthmus of Panama. In 1904 the federal government acquired the entire capital stock of the corporation except the requisite qualifying shares of its directors. The government thus became sole owner, and its entire directorate was thereafter named by the Secretary of War. While the railroad rendered transportation services for all who applied, its principal corporate business pertained to the construction, operation, maintenance and defense of the Panama Canal. As such, the United States supreme court declared that it was a governmental agency; and that its employees were to be regarded as in government service so as to render exempt from the income tax of the state of New York the salaries and compensation paid to them by the railroad company. This case is of no consequence here except as a good instance of a state corporation acting as a federal instrumentality.

Without further discussion of federal cases cited for our consideration, we think none of them is sufficiently analogous to guide us to

a correct decision in this case; although the language we have italicized in the excerpt quoted above from the opinion of Mr. Justice Holmes in *Clallam County v. United States,* supra, indicates that the supreme court clearly recognized that a corporation which might perform some governmental function in addition to the conduct of its own private corporate business was not exempt from state taxation.

The term "federal instrumentality" is not defined in our statutes, but it is a common one in the law books. An instrumentality is anything used as a means or agency. (32 C. J. 947.) Therefore a federal instrumentality is a means or agency used by the federal government. In the law books the terms "federal agency" and "federal instrumentality" are used interchangeably. Thus in 2 Cooley on Taxation (4th ed.) 1300, it is said: .

"A corporation cannot escape state taxation merely because it was created by the federal government, nor because it was subsidized by it, nor because it is employed by the federal government, wholly or in part, unless it is really an agency or instrumentality for the exercise of the constitutional powers of the United States."

In *Clallam County v. United States,* supra, the court speaks of the United States Spruce Production Corporation as an "instrumentality for carrying on the war," and also as an "agent . . . created . . . for the sole purpose of producing a weapon for the war."

On the other hand, the supreme court has also said:

"It is apparent that not every person who uses his property or derives a profit, in his dealings with the government, may clothe himself with immunity from taxation on the theory that either he or his property is an instrumentality of government within the meaning of the [immunity] rule." (*Metcalf & Eddy v. Mitchell,* 269 U. S. 514, 522-523.)

In the same case it was said:

"Just what instrumentalities of either a state or the federal government are exempt from taxation by the other cannot be stated in terms of universal application . . .

"As cases arise, lying between the two extremes, it becomes necessary to draw the line which separates those activities having some relation to government, which are nevertheless subject to taxation, from those which are immune. Experience has shown that there is no formula by which that line may be plotted with precision in advance. But recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation." (pp. 522, 523.)

In *Baltimore Shipbuilding Co. v. Baltimore,* 195 U. S. 375, the state's right to tax certain land and dry dock property was chal-

lenged on the ground that it was only held by the company under a conditional grant from the United States that it construct and maintain a dry dock for the repair of the government's ships free of docking charges. The land was subject to reverter if or when the government's purposes in making the grant should fail of fulfillment. The grantee corporation contended that its property which the state sought to tax was a federal agency and actually used by the United States, and hence not subject to taxation. In affirming a judgment sustaining the state's right to tax the property, the supreme court said:

"It seems to us extravagant to say that an independent private corporation for gain, created by a state, is exempt from state taxation, either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time." (p. 382.)

.Again, in *Fidelity & Deposit Co: v. Pennsylvania*, 240 U. S. 319, 36 S. Ct. 298, 60 L. Ed. 664, the state's right to impose a tax on the premiums collected on surety bonds given by federal officers was the subject of the lawsuit. In accordance with an act of congress, the attorney general of the United States authorized the company to enter into fidelity and surety obligations required by federal statutes. The company had entered into such obligations and because of these it contended that it was a federal instrumentality and therefore immune from state taxation. The supreme court declined to sanction that contention, saying—

"That the challenged tax 'is an exaction for the privilege of doing business,' seems plain (*Equitable Life Ass. Soc. v. Pennsylvania*, 238 U. S. 143); and undoubtedly a state may not directly and materially hinder exercise of constitutional powers of the United States by demanding in opposition to the will of congress that a federal instrumentality pay a tax for the privilege of performing its functions. (*Farmers' Bank v. Minnesota*, 232 U. S. 516; *Choctaw & Gulf R. R. v. Harrison*, 235 U. S. 292.) But mere contracts between private corporations and the United States do not necessarily render the former essential governmental agencies and confer freedom from state control. (*Baltimore Ship Building Co. v. Baltimore*, 195 U. S. 375.)" (p. 323.)

We shall not stop to consider whether the opinion from which we have just quoted accords completely with the opinion of the learned district judge in *United States v. Doherty*, 18 F. Supp. 793. The two cases were concerned with vitally different questions—the one with a question of taxation, the other with the question of federal criminal law.

With the aid of the cases noted above, as well as others which we have assiduously studied, let us turn again to the statute which authorizes the plaintiffs to enter into its relations with the federal home loan bank. Section 1 (G. S. 1935, 17-10a01) provides that building and loan associations may subscribe for stock in a federal home loan bank; may borrow money from such bank; may assign their mortgages to it as security for such borrowings; may avail themselves of all the advantages and privileges offered by such bank while they are members of it—that is, while they are stockholders of it—for membership is manifestly a loose expression capable of no other significance; and they are also authorized to comply with the provisions of the federal home loan bank act.

Articulating with this Kansas statute are the provisions of the federal statute of July 22, 1932, and its amendments (12 U. S. C. A. p. 965), the pertinent parts of which read:

"(a) Any building and loan association . . . . shall be eligible to become a member of, or a nonmember borrower of, a Federal Home Loan Bank if such institution . . . (3) makes such home mortgage loans as, in the judgment of the board, are long-term loans (and in the case of a savings bank, if, in the judgment of the board, its time deposits, as defined in section 461 of this title, warrant its making such loans). No institution shall be eligible to become a member of, or a nonmember borrower of, a Federal Home Loan Bank if, in the judgment of the board, its financial condition is such that advances may not safely be made to such institution or the character of its management or its home-financing policy is inconsistent with sound and economical home financing, or with the purposes of this chapter.

"(b) An institution eligible to become a member or a nonmember borrower under this section may become a member only of, or secure advances from, the Federal Home Loan Bank of the district in which is located the institution's principal place of business, or of the bank of a district adjoining such district, if demanded by convenience and then only with the approval of the board."

Section 1426 of the federal statute (12 U. S. C. A. p. 966) fixes the par value of the bank stock at $100 per share, and the minimum subscription to the bank's stock required of a building and loan association is an amount equal to one percent of the unpaid principal of the subscriber's home mortgage loans, but at least to the amount of $500, or five shares. The same section provides that on six months' notice any member (stockholder) may withdraw from membership upon the execution of certain formalities, needless to state here.

In the Home Owners' Loan Act of 1933, 12 U. S. C. A. § 1464, it is provided that any member of a Federal Home Loan Bank may be

employed as fiscal agent of the government, and when so designated it shall perform all such reasonable duties as fiscal agent as may be required of it. Neither of these plaintiffs has been so employed by the federal government nor by any other instrumentality of the United States, and under the rule that statutory exemptions are to be strictly construed we could not sanction a view that because plaintiffs may at some time become fiscal agents of the federal government they are now exempt from taxation for the benefit of the unemployment compensation fund. Certain phases of this general subject were exhaustively treated in *Clinton v. State Tax Commission*, 146 Kan. 407, 71 P. 2d 857.

Tested by all the light the diligence of counsel for the litigants has supplied us, as well as by our own researches, we do not regard the plaintiffs' mere stockholder membership in the Federal Home Loan Bank of Topeka, with the privileges and duties attendant on that relationship, as sufficient to constitute them federal instrumentalities, nor to relieve them from making contributions to the unemployment compensation fund created by the statute of 1937.

The writ must therefore be denied, and defendants are entitled to judgment. It is so ordered.