**TEXAS UNEMPLOYMENT COMPENSATION COMMISSION et al. v. METROPOLITAN BUILDING & LOAN ASS'N et al.**

No. 8838.

Court of Civil Appeals of Texas. Austin.

April 3, 1940.

Rehearing Denied April 24, 1940.

Gerald C. Mann, Atty. Gen., Geo. W. Barcus and R. W. Fairchild, Asst. Attys. Gen., and Lee G. Williams and James W. Peavy, both of Austin, for appellants.

A. E. Wood and Dan Moody, both of Austin, for appellees.

**310**

BLAIR, Justice.

Appellees, ten building and loan associations, instituted this proceeding to perpetually enjoin and restrain appellants, the Texas Unemployment Compensation Commission and the Attorney General, from by civil suit, criminal prosecution, or otherwise, attempting to enforce the provisions of the Texas Unemployment Compensation Act, Vernon's Ann.Civ.St. art. 5221b—1 et seq., against them, upon the ground that each of them was and is now an instrumentality of the United States and as such is by the Texas Unemployment Compensation Act specifically exempted from its provisions. Judgment was for appellees as prayed; hence this appeal.

Appellants make two contentions as follows:

First. That the trial court erred in overruling their general demurrer to the petition for injunction, upon the ground that the court was without jurisdiction to entertain the suit and to grant the injunctive relief, because, if the provisions of the Texas Unemployment Compensation Act is not applicable for the reasons plead, then each of the appellees (plaintiffs below) has a plain, adequate, and complete remedy at law against the enforcement of the act, by pleading as defense in any civil, criminal, or other proceeding instituted against them, their exemption from the operation of the act.

Second. That if the trial court did have jurisdiction to entertain the suit, then it erred in holding that each of the appellees is an instrumentality of the United States, and therefore entitled to exemption from the provisions of the Texas Unemployment Compensation Act, which expressly exempts instrumentalities of the United States from its operation.

In support of their first contention, appellants cite as decisive of the question the cases of Texas Unemployment Compensation Commission v. Campbell, Tex.Civ. App., 119 S.W.2d 388, writ dismissed, and Stephens v. Texas & P. Ry. Co., 100 Tex. 177, 97 S.W. 309. On the other hand, appellees cite as decisive of the jurisdiction of the trial court to entertain the suit for the injunctive relief prayed for, among others, the cases of Rogers v. Daniel Oil & Royalty Co., 130 Tex. 386, 110 S.W.2d 891; Sheppard v. Jacksboro Ref. Co., Tex. Civ.App., 123 S.W.2d 497, writ dismissed; and City of Fort Worth v. Southland Greyhound Lines, Ins., 123 Tex. 13, 67

S.W.2d 361, wherein the Stephens case was distinguished on the question of lien on property to secure the taxes, which distinction is applicable to the instant case.

■ We have reached the conclusion that the Rogers-Daniel Oil & Royalty Company case by the Supreme Court is decisive of the instant case; and that the question need not be discussed at length. Suffice it to say that in the instant case, appellees alleged that although they were exempted by the Texas act from its operation, being instrumentalities of the United States, appellants were threatening to enforce the act against them and compel them to pay the contributions or taxes, interest, fines, and penalties authorized by the statute against employers covered by the act; and after setting forth the various contributions or taxes, fines and money penalties, and other regulatory requirements which the Unemployment Compensation Act required of employers covered by it, appellees alleged as grounds for the injunction, as follows: * * * "that unless restrained by this Court, the Unemployment Compensation Commission and the Chairman and members thereof will insist that the Attorney General institute civil and criminal proceedings against the plaintiffs, and each of them, to compel the plaintiffs to pay said money and furnish said reports and submit to said inspection, regulations and visitations; and the Attorney General, unless restrained by this Court, will periodically and from time to time, as liability to payment would arise under said Chapter 482 [Acts 1936, 3d Called Sess.], if Plaintiffs were subject thereto, institute and prosecute civil and criminal proceedings against these Plaintiffs, and each of them, to compel each of them to submit to the rules and orders of said commission and to make the payments demanded of them by said Commission. Each of plaintiff corporations will be subjected to civil suits for the collection of contributions due under the Texas Unemployment Compensation Act as said payments mature from time to time and remain unpaid, and will further be subjected to criminal prosecutions for failure to comply with provisions of the Texas Unemployment Compensation Act which requires periodical reports to the Commission from all subject employers."

It was stipulated that appellants were threatening to and intend to proceed against appellees both by civil suit and

criminal proceedings, if they did not comply with the provisions of the act.

■ Since the statute provides for the payment of the contributions or taxes every 30 days, and authorizes the Commission to instruct the Attorney General to institute civil suits and criminal prosecutions against delinquent employers for contributions or taxes, and for additional penalties, it follows that numerous suits could be filed to collect them; and since the statute provides for various fines and imprisonment penalties, and provides that each day shall constitute a separate offense, it is manifest that the failure to pay the contributions or taxes, and to comply with other regulatory requirements of the Commission, would subject each of the appellees to a multiplicity of suits and to the payment of accumulated penalties in the sum of thousands of dollars and years of imprisonment. These alleged and stipulated facts bring the instant case clearly within the rule announced in the Rogers-Daniel Oil & Royalty Company case, wherein the court say [130 Tex. 386, 110 S.W.2d 895]: "* * * In fact, if the litigation should be drawn out any great length of time a great number of such suits would result. * * * It is certainly the rule in this state that equity will take cognizance of a controversy to determine the rights of all the parties, and grant the relief required to meet the ends of justice in order to prevent a multiplicity of suits. * * * To our minds, if a remedy at law, though otherwise complete and adequate, leads to a multiplicity of suits, that very fact prevents it from being complete and adequate."

We have reached the conclusion that the trial court erred in holding that appellees are each an instrumentality of the United States within the meaning of that term as used in Section 19(g)(6) of the Texas Unemployment Compensation Act, as amended by Acts 1937, c. 67, § 7, Vernon's Ann.Civ.St. art. 5221b—17, the material portion of which reads as follows:

"The term 'employment' shall not include: * * *

"(B) Service performed in the employ of any other State or its political subdivisions, or of the United States Government, or of an instrumentality of any other State or States or their political subdivisions or of the United States."

Seven of the appellees (Metropolitan Building and Loan Association, Abilene Building and Loan Association, Houston Building & Loan Association, Mutual Deposit & Loan Company, San Antonio Building & Loan Association, Dallas Building & Loan Association, and Gibralter Savings & Building Association) are building and loan associations organized under the laws of Texas. Title 24, Articles 852 to 881a—69, Vernon's Texas Civ.Sts. Prior to any time in question each of these seven corporations had become and is now a member of the Federal Home Loan Bank of Little Rock, Arkansas, by the provisions of Article 881a—37, Vernon's Texas Civil Statutes, and Title 12, Sections 1444, 1422(4), Ch. 11, United States Code Annotated. The Federal Home Loan Bank of Little Rock, Arkansas, was created under the Federal Home Loan Bank Act, 12 U.S.C.A. § 1421 et seq., p. 962, which act prescribes the eligibility requirements for a state-created building and loan association to become a member of the Federal Home Loan Bank, which membership may be terminated by the action of the Board of Directors of the Federal Home Loan Bank, or by the voluntary withdrawal of the state-created association. The shares of stock of each appellee state-created corporations not held by the United States Government through the Home Owners Loan Corporation is owned by individual shareholders who occupy the same relationship thereto as stockholders of any other corporation with respect to dividends; and the Home Owners Loan Corporation is entitled to the same privileges with respect to the shares owned or held by it.

The remaining three appellee corporations (First Federal Savings & Loan Association of Beaumont, First Federal Savings & Loan Association of San Antonio, and First Federal Savings & Loan Association of Pampa) were organized and "automatically" became members of the Federal Home Loan Bank under the provisions of Title 12, Ch. 11 and 12 U.S.C.A. § 1421 et seq., p. 962. These federal associations are created primarily for profit for their shareholders.

Each of the ten appellee corporations is subject to the provisions of subsection (k) of Section 1464, Title 12, United States Code Annotated, which provides that: "When designated for that purpose by the

Secretary of the Treasury, any Federal savings and loan association or member of any Federal Home Loan Bank may be employed as fiscal agent of the Government under such regulations as may be prescribed by said Secretary and shall perform all such reasonable duties as fiscal agent of the Government as may be required of it. Any Federal savings and loan association or member of any Federal Home Loan Bank may act as agent for any other instrumentality of the United States, when designated for that purpose by such instrumentality of the United States."

Neither of the seven appellee state-created corporations has been actually designated as fiscal agent of the United States Government by the Secretary of the Treasurer or by any other instrumentality of the United States Government, but are nevertheless subject to the requirements of the act. The three appellee federal associations have been designated by the Acting Secretary of the Treasury of the United States as fiscal agents of the United States Government, and have performed on behalf of the United States Government some of the duties which may be required of them, consisting mainly in the collection of debts due by individuals to the Home Owners Loan Corporation, an instrumentality of the United States Government. Each of the ten appellee corporations is engaged in the business of selling its investment shares and in lending money upon the securities permitted by law, such money to be used in purchasing and building of homes and other improvements of real property.

It will be again noted that Section 19(g) (6) (B) of the Texas Unemployment Act provides that the term "employment" shall not include "service performed in the employ * * * of the United States Government, or of an instrumentality * * * of the United States". Likewise, Section 907(c)(5) of the Federal Social Security Act, 42 U.S.C.A. § 1107(c) (5), provides that the term "employment" means any service, "except * * * Service performed in the employ of the United States Government or of an instrumentality of the United States." By regulatory rule (Reg. 90, Section 206 (5-6), the Internal Revenue Department, charged with the duty of collecting the excise taxes imposed on employers under the Social Security Act, has excepted "services performed by Federal

and State employees", including any instrumentality of the United States, or any state, "without distinction between those exercising fuctions of a governmental nature and those exercising functions of proprietary nature". At the time of the trial of this case below the Internal Revenue Department had ruled that all state banks, which had become members of the Federal Home Loan Bank or the Federal Reserve System, were instrumentalities of the United States Government and as such were exempt from the payment of the excise taxes imposed on employers under the Federal Social Security Act. The learned trial judge cited this ruling in support of his conclusion that appellees are instrumentalities of the United States Government and as such are exempt from the provisions of the Texas Unemployment Act. However, since the trial below, the courts of three states have held that member state banks of the Federal Home Loan Bank and member state banks of the Federal Reserve System, which are required under such membership to act in certain matters as depositories and fiscal agents of the Federal Government, are not "instrumentalities" of the United States Government, and are not exempt as "federal instrumentalities" within the meaning of that term as used in the several state unemployment compensation acts which are identical or similar to ours. Capitol Building & Loan Association v. Kansas Commission of Labor, etc., 148 Kan. 446, 83 P.2d 106, 118 A.L.R. 1212; North Carolina Unemployment Compensation Commission v. Wachovia Bank & T. Co., 215 N.C. 491, 2 S.E.2d 592; Western Bank & Trust Co. v. Unemployment Compensation Commission of Ohio (Court of Appeals) not designated for publication.

The relationship of state banks, which have complied with pertinent state and federal laws and have become members of the Federal Home Loan Bank or the Federal Reserve System, to the Federal Government is entirely parallel with and in every respect similar to the relationship of state-created building and loan associations, which have complied with pertinent state and federal loans and have become members of the Federal Home Loan Bank. In consequence, the decision in the cases above cited, holding that such state banks are not instrumentalities of the Federal Government within the meaning of the similar unemployment compensa-

tion laws of those states are applicable to the instant case, and require the holding that building and loan associations created under state law, do not become "federal instrumentalities" exempt from contributions or taxes imposed on employers by state unemployment compensation laws, merely because such state-created building and loan associations have complied with pertinent state and federal laws and have become members of the Federal Home Loan Bank, or because of their consequent relationship thereto under pertinent state and federal statutes.

We agree with the above-cited decision of the courts of sister states, which by reasonable analogy is decisive of the question that the appellee state-created building and loan associations are not "federal instrumentalities" exempt from the operation of the Texas Unemployment Compensation Act.

We have also reached the conclusion that the three appellee federal associations are not instrumentalities of the United States Government, and are not exempt from the operation of the Texas Unemployment Compensation Act.

These federal associations were organized under Chap. 12 of Title 12 of the U. S. C. A., known as the Home Owners' Loan Act of 1933, which provides for the creation of a federal agency or instrumentality known as the Home Owners Loan Corporation, and in Section 1464(a) provides for the creation or organization of voluntary Federal Savings and Loan Associations, which shall, upon their organization "automatically" become members of the Federal Home Loan Bank, which was created as a federal agency under Chap. 11, Title 12 of the U. S. C. A., known as the Federal Home Loan Bank Act. These federal associations are organized primarily for profit of their stockholders, the idea, purpose and character of such federal associations being set forth in Section 1464 (a) of Chap. 12, Title 12 U.S.C.A., as follows: "In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations,' and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States."

By no language does either Chapters 11 or 12 of Title 12 U. S. C. A., designate the federal associations as agents or instrumentalities of the Federal Government, but these statutes merely provide that such federal associations shall, upon organization, "automatically" become members of the Federal Home Loan Bank; and that such membership merely makes them fiscal agents of the Federal Government if and when called upon by federal authorities to act.

It may be also here observed that such federal associations render no different service for the Federal Government from that required of the state-created associations which become members of the Federal Home Loan Bank. In the area in which the federal associations operate, they are competitors of the state-created associations operating in the same area, and both the state and federal associations are organized to do substantially the same thing and for profit to their shareholders. Both the state and the federal associations are voluntary or permissive, and are not wholly owned by the Federal Government, and both enjoy the same incidental privileges and owe the same duties to the Federal Government as members of the Federal Home Loan Bank. And as strong evidence that Congress did not regard the federal associations as instrumentalities of the Federal Government, exempt from state taxation, it specifically authorized states and other taxing authorities to tax them. See Sec. 1464(h), Chap. 12, Title 12 U.S.C.A., which, after providing the manner in which the Federal Government might tax such associations, further provides: "* * * no State, Territorial, county, municipal, or local taxing authority shall impose any tax on such associations or their franchise, capital, reserves, surplus, loans, or income greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions."

Thus it is manifest that Congress did not intend to make federal savings and loan associations instrumentalities of the Federal Government, exempt from state taxation, but to the contrary expressly authorized states to tax them in the manner provided. The state, in the instant case, is by its Unemployment Compensation

Act attempting to do the very thing Congress authorized. That is, it seeks to impose an excise tax upon both state and federal building and loan associations, which excise tax on the federal associations is not "greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions."

The basic reasons or grounds for holding the state-created associations not "federal instrumentalities" are applicable to federal associations. That is, both the state and federal associations are organized, owned, and operated for profit of their shareholders. As members of the Federal Home Loan Bank each enjoys the same incidental privileges conferred and each must perform the duties imposed by the Federal Government. Neither is owned by the Federal Government, and although each does promote governmental policy, that fact does not convert either of these private institutions into an "instrumentality of government" of the United States within the meaning of that term as used in the Texas Unemployment Compensation Act.

In accordance with our above conclusions, the judgment of the trial court is reversed and judgment is here rendered for appellants, that appellees take nothing by their suit, and the perpetual injunction granted by the trial court is dissolved.

Reversed and rendered.