## GREAT LAKES DREDGE & DOCK CO. et al. v. CHARLET.

### No. 10290.

Circuit Court of Appeals, Fifth Circuit.
Feb. 11, 1943.

Judgment affirmed May 24, 1943.

See — U.S. —, 63 S.Ct. 1070, 87 L.Ed. —.

Eberhard P. Deutsch, R. Emmett Kerrigan, and James J. Morrison, all of New Orleans, La., for appellants.

W. C. Perrault, of Baton Rouge, La., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Alleging that an actual controversy had arisen and was existing between them and Charlet, as Administrator of the Louisiana Unemployment Compensation Law,[1] over whether the said law could be lawfully applied to and enforced against them in respect to the employment by them of officers and crewmen in furtherance of their dredging operations on the navigable waters of the United States within the State of Louisiana, plaintiffs brought this suit for a declaration that in respect of the relation of employment between plaintiffs and their employees, they are not subject to the act. As their complaint alleges it, the basis of their claim to a declaration is: That the Louisiana Unemployment Compensation Law was amended in 1938 to bring within its provisions all the vessels and all the employees of plaintiffs, with the result that if valid, plaintiffs were required thereby to pay to the state unemployment fund, contributions, measured by the wages paid by them to their employees, and in addition, under the Act of 1936, to withhold a portion

[1] Act 97 of 1936, as amended by Act 164 of 1938; Act 16 of the First Special Session and Acts 10 and 11 of the Regular Session of 1940.

of the wages due their employees; that in view of the provisions of Art. 1, Sec. 8 and Art. 3, Sec. 2 of the Constitution of the United States, giving to the Congress exclusive power to legislate with respect to matters within the admiralty and maritime jurisdiction of the United States and depriving the states of all power to legislate thereto, the act as so amended is unconstitutional, null and void. The defense was: That the act levied a nondiscriminatory excise tax, based upon the exercise of the right or privilege of employing individuals, measured by the wages paid; that the right to levy such tax is inherent in state sovereignty and was not surrendered to the United States; that the statute in no way affects the rights, duties or obligations as between themselves of parties to a maritime contract, and in no way interferes with or contravenes the maritime law or affects the uniformity of that law, or contravenes the purpose or intent of any act of Congress. Submitted to the court on a stipulation of fact, these defenses were maintained, the claim for declaratory judgment was accordingly denied, and the action was dismissed. The district judge, in a thorough and exhaustive opinion, canvassing the facts and the law,[2] set out both fully and precisely the facts upon which the decision of the case turned, and gathered and adequately discussed the controlling authorities. We agree not only with the conclusion reached, but generally with what is said in the opinion. We shall not, therefore, enter into any detailed statement or discussion of either the facts or the authorities, but, referring to the opinion for that detail, shall content ourselves with a brief summation. In reaching this conclusion, we have assumed, without deciding, though appellee vigorously contests this,[3] that within the exception of Subd. 3, Sec. 1107 (c), 42 U.S.C.A., all of plaintiffs' employees are officers and members of the crew of a vessel on the navigable waters of the United States. So assuming, we entirely agree with the district judge that plaintiffs are not entitled to the declaration they seek that the Louisiana Unemployment Compensation Act may not, because of the invoked constitutional provisions, be enforced as to them. It is stipulated that the employment relation sought to be taxed involves employees, described in detail, including what are called "shore crews", employed in the customary and usual way in the operation and navigation of dredges, pile drivers and other appurtenances used for deepening, widening, improving, extending and cleaning navigation channels and other navigable waters in Louisiana and for creating fill and other similar operations, and that such vessels do not customarily operate between ports in Louisiana and ports outside of it.

As regards those activities which are directly connected with commerce and navigation in their interstate and international aspects, it has been held,[4] with respect to workmen's compensation laws, that the law must be uniform throughout the United States, and the laws of the various states are not competent to modify or vary it. The rationale of these cases is that a state law cannot, as between the parties, change or affect rights and obligations arising under a maritime contract or matters having a direct relation thereto. But so narrow and tenuous is the authority of these cases that it is now the well settled rule that, though a contract be maritime, if it is local in character and has no direct relationship to navigation as navigation, state compensation laws may validly apply to persons the contract affects, and this is so because such laws do not interfere with any characteristic feature of general maritime law, do not substantially affect essentially maritime rights and obligations. Thus exception after exception to the broad rule the Jensen case sought to lay down has been grafted upon it until it has become the mere shadow of its former self. This is well illustrated in the long line of cases

[2] Great Lakes Dredge & Dock Co. v. Charlet, D.C., 43 Fed.Supp. 981.

[3] Pointing out that the Louisiana statute exempts "service performed as an officer or member of a crew of a vessel on the navigable waters of the United States customarily operating between ports in this State and ports outside this State", Sec. 18(g) (7) of Act 97 of 1936, as amended, by Act No. 11 of 1940, p. 55, § 18(g) (6) (c), he cites administrative rulings under unemployment compensation statutes of the several states holding that similar workers are not within an exception as broadly worded as that of the federal act. Appellee cites also to the same effect, Puget Sound Bridge & Dredging Co. v. State Unemployment Compensation Commission, 168 Or. 614, 126 P.2d 37.

[4] Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L. R.A.1918C, 451, Ann.Cas.1917E, 900, and cases following it.

culminating in Just v. Chambers, 312 U.S. 383, 668, 61 S.Ct. 687, 691, 85 L.Ed. 903, in the statement, "With respect to maritime torts * * * the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation", and the holding, that under Florida law, permitting survival against a wrongdoer's estate of a cause of action against him for tort, a cause of action for a maritime tort committed in Florida waters will survive in admiralty. If, therefore, the statutes in question here could be said to at all affect the contracts as between plaintiffs and employees, that affecting within the authority of these cases, would fall within the exceptions to, rather than within the rule of, the Jensen case. But we think it quite plain that the statute is not a regulatory but a taxing act, and that, as such, it has no effect whatever upon, but leaves, the contracts, as between plaintiffs and their employees, exactly as they are in respect of every right and obligation which, viewed as maritime contracts, they grant and impose. Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516; Globe Grain & Milling Co. v. Industrial Comm., 98 Utah 36, 91 P.2d 512.

As a taxing act, it stands on the firmest kind of ground. It is an excise levied upon that aspect of the employment relation which represents the exercise in a state of the right and privilege of employing persons upon work carried on there, Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327. It is unquestionably valid unless it injuriously trenches upon matters of exclusive federal concern or contravenes some paramount federal legislation. Appellants say that it does both. We think it clear that it does neither. Since the time of Gibbons v. Ogden, 9 Wheat. 1, 197, 6 L.Ed. 23, it has been settled that "the grant of the [federal] power to lay and collect taxes is, like the power to regulate commerce, made in general terms, and has never been understood to interfere

with the exercise of the same power by the states"; and that "while a state may not use its taxing power to regulate or burden interstate commerce * * *, a state excise tax which affects such commerce, not directly, but only incidentally and remotely, may be entirely valid where it is clear that it is not imposed with the covert purpose or with the effect of defeating federal constitutional rights", Hump Hairpin Mfg. Co. v. Emmerson, 258 U.S. 290, 295, 42 S.Ct. 305, 307, 66 L.Ed. 622. Thus it is settled that a state may, without offending against the commerce clause, tax instruments used in interstate commerce, Western Union Tel. Co. v. Massachusetts, 125 U.S. 530, 8 S.Ct. 961, 31 L.Ed. 790, as well when they are, as when they are not, maritime, Old Dominion S. S. Co. v. Virginia, 198 U.S. 299, 25 S.Ct. 686, 49 L.Ed. 1059, 3 Ann.Cas. 1100. Indeed, exceptional cases aside, it may be stated generally that where such taxes have been invalidated by the courts, the situations are such that a number of states might impose similar taxes, with the result of a pyramiding of tax burdens which could destroy or seriously impair interstate commerce, Western Live Stock v. Bureau, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944, or the statutes have provided an illegal method of measuring or computing the tax as in the case of a tax on the gross receipts from interstate business. Puget Sound Stevedoring Co. v. Tax Comm., 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68; Crew Levick Co. v. Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295; Gwin, White & Prince v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272. The tax imposed here is self-limited to Louisiana. Numerous decisions,[5] holding valid state taxes laid upon persons engaged in maritime pursuits and upon maritime instrumentalities attest that it is no impeachment of such a tax that it is laid upon persons engaged in maritime pursuits and upon maritime instrumentalities.

It remains only to consider whether the exception, from the Federal Social Security Act of "officers and crews of vessels" is an expression of the will of congress that such persons so excepted are also to be excepted from provisions of state acts primarily for unemployment compensation. A reading of the act makes it clear

[5] Cornell Steamboat Co. v. Sohmer, 235 U.S. 549, 35 S.Ct. 162, 59 L.Ed. 355; Old Dominion S. S. Co. v. Virginia, supra; Huse v. Glover, 119 U.S. 543, 7 S. Ct. 313, 30 L.Ed. 487; Sands v. Manistee River Imp. Co., 123 U.S. 288, 8 S.Ct. 113, 31 L.Ed. 149.

that such an intent is not to be found in the express language of the exception and that if it is to be found in the statute at all, it must be by an implication based on the conclusion that the Federal Social Security act was intended to, and did, set a pattern for state unemployment acts from which they could not vary. We think that the history of the passage of the federal act, what has been written and said about it, and the state acts, Steward Machine Co. v. Davis, supra, Unemployment Compensation Comm. v. Jefferson Standard Life Ins. Co., 215 N.C. 479, 2 S.E.2d .584, and the structure and contents of the several state acts give rise to an exactly opposite conclusion. That congress could have provided an unemployment compensation system with respect to officers and crews of vessels and have excluded the states wholly from that field may not be doubted. Cf. O'Donnell v. Great Lakes Dredge & Dry Dock Co., Feb. 1, 1943, 63 S.Ct. 488, 87 L.Ed. ——. Whether it could have excluded the states from making provision for unemployment compensation with respect to employees in those occupations without at the same time making affirmative federal provision for them, we need not inquire, for it did not in this case undertake to do that. Neither need we speculate upon the considerations which induced the writing into the federal act of the numerous exceptions it contains. It is sufficient for us to determine whether the presence there of the exception as to officers and crews of vessels operates in any way to impair or restrict the power of the states to lay their unemployment compensation taxes on employments coming within that exception. Appellants, pointing to the fact that as to many of the exceptions congress has by later enactments expressly conferred authority on the states to apply their unemployment compensation laws to classes of employment originally excepted but has not done so as to officers or members of the crews of vessels, insists that this is the strongest kind of proof that the exception was intended to be, and was exempted not only as to congressional, but to state, taxes as well. We do not think so. The power of a state to tax, as well as its power to gov-

ern men and things, will not be lightly stricken down by implication. It may not be doubted that the state of the authorities is such that there is much confusion to the the casual, and no little to the careful, reader of them as to when there is and when there is not such conflict between state and federal regulations of the same subject matter as to exclude a state from a field. This confusion is grounded in and springs in part from the failure of some of the opinions to clearly apprehend and point out the differentiating facts in each situation. It is grounded in part, too, in the failure to draw clearly enough the distinction between those cases where a complainant, subjected to federal regulation of some kind, is attempting to magnify and enlarge the actual scope of the federal law to use it as a shield against, or a cat's paw to draw his chestnuts from the fire as to,. state legislation and those where confronted with positively inconsistent and conflicting state and federal laws and ordered but unable to comply with both, complainant, because of that inability, invokes the paramount protection of the federal laws. Cf. Cloverleaf Butter Co. v. Patterson, 5· Cir., 116 F.2d 227; Id., 313 U.S. 551, 61 S.. Ct. 834, 85 L.Ed. 1515. The same considerations but to a far less extent have operated to confuse in the field of taxation. Cf.. Western Live Stock v. Bureau, 303 U.S.. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944. The federal statute invoked here as. a limitation upon state power, either in itself or in the history of its enactment, does. not, nor do the enactments of the several. states, afford apparent basis for a finding: that in exempting officers and crews of vessels from the taxing provisions of the federal act, the congress intended to deprive the persons thus excepted from the protection of state unemployment acts, with: the result of leaving such employees wholly unprotected by either state or federal‡ law. With the New York Court of Appeals and the Supreme Court of New Jersey,[6] which have declined to treat this very exception as a prohibition on state action, we are not inclined to invent one. The judgment was right. It is affirmed.

<hr>

[6] Claim of Cassaretakis, 289 N.Y. 119, 44 N.E.2d 391; Shore Fishery v. Board of Review, 127 N.J.L. 87, 21 A.2d 634. Cf. Capitol Bldg. & Loan Ass'n v. Kansas Comm., 148 Kan. 446, 83 P.2d 106, 118 A.L.R. 1212; Fidelity-Philadelphia Trust Co. v. Hines, 337 Pa. 48, 10 A. 2d 553; Unemployment Compensation Comm. of North Carolina v. Jefferson Standard Life Ins. Co., 215 N.C. 479, 2 S.E.2d 584; Ctf. 8 George Washington. Law Review, 990.