PUBLIC SERVICE RAILWAY COMPANY v. BOARD OF PUBLIC UTILITY COMMISSIONERS.

Argued June 10, 1911—Decided June 12, 1911.

1. A three-cent fare regulation maintained for years by the railway company was not *ipso facto* abrogated by the enactment of section 18 of the Public Utility act. *Pamph. L.* 1911, *p.* 374.
2. The effect of the enactment of the Public Utility act was to confer upon the commission thereby created power to determine whether such a preferential regulation of fare was just and reasonable.
3. The construction placed upon an act by an administrative body in the state where the act was first enacted may assist in the construction of the act by a state subsequently adopting it, but such construction is not a judicial construction which is to be read into the act *ex necessitate,* under the well recognized rule of statutory construction by the state subsequently adopting the act.
4. In construing an act the spirit and intent of the legislature as manifested by the entire scope of the legislation and its language must continue.

---

On *certiorari* to determine the legality of an order of the public utility commissioners restoring a reduced rate of fare to school children.

Before Justice MINTURN.

For the prosecutor, *Frank Bergen.*

For the defendant, *Frank H. Sommer.*

The opinion of the court was delivered by

MINTURN, J.   The importance of a speedy review of the legislation under consideration in this case by the court of last resort, requires that the expression of my views be briefly and expeditiously stated.

The concrete question involved is whether a system of three cent fares maintained by the railway company for many years was abrogated by the enactment of the so-called Public Utility law.   *Pamph. L.* 1911, *p.* 374.   The contention that it was abrogated is based by the company upon a construction given by the interstate commerce commissioners to section 3 of the Interstate Commerce act, which it is insisted is substantially similar to section 18 of the act *sub judice.*

I am of the opinion that the construction adopted in that case should not be followed here—first, because the act is not the same enactment in terms, and secondly, because the interstate commerce commissioners are an administrative and not a judicial body, and their decision as an administrative body on a detail of the act is not a judicial determination.   *Interstate Commerce Commission* v. *Brimson,* 154 *U. S.* 447.

To adopt the construction given by an extraterritorial court to an act subsequently adopted in another state, so that the construction thus given may be read into the act as part of it, the statute must appear to be the same in its entirety, and its terms "must be of doubtful import" so as to require construction.   So said Mr. Justice Van Syckel in *Fritts* v. *Kuhl,* 22 *Vroom* 199.

Chief Justice White, in *New York, New Haven and Hartford Railroad* v. *Interstate Commerce Commission,* 200 *U. S.* 361, limits the application of the rule to a construction "not palpably erroneous."   He applied it in *Interstate Commerce Commission* v. *Delaware, Lackawanna and Western Railroad,*

220 *Id.* 235, because the section in question had been copied from the English Railway Consolidation act of 1845, and that act had been passed upon by the English courts of judicature and not by an administrative commission.

The practice of such a commission may assist us in construing an act, but we are not bound to accept it as a part of the act, under the recognized rule of judicial construction. We are free, therefore, to place our own construction on this act.

The Public Utility act does not abrogate the system of three cent fares maintained by the railway company, because section 18 applies only to such preferences as are "undue or unreasonable." This was not the enactment of a new condition, nor did it create a new legal *status.* It was the immemorial rule of the common law. *Messenger* v. *Pennsylvania Railroad,* 7 *Vroom* 407; *Atchison T. & S. F. Ry.* v. *D. & N. O. R.,* 110 *U. S.* 667.

When the railway, a decade ago, instituted the system of three cent fares upon some of its lines, and entered into contracts in the form of municipal ordinances on other lines, it did so under the ægis of this common law rule, now transmuted into statute law.

The only change therefore that has been effectuated by this legislation which can be said to affect the railway at all at this juncture is, that the legislature has created a commission and conferred upon it the power to determine what preferences are "undue or unreasonable." Otherwise, the law is the same that existed when the public service company took over its subsidiary lines with their municipal limitations as to fares, and with commendable public spirit made a uniform reduction in fare on its entire system for school children. Its contention that the effect of the enactment was to repeal this beneficent condition does not accord with the spirit and intent of the act. The clear legislative purpose was to administer and to regulate in their operation these instrumentalities, quite properly denominated public service companies, which are chartered *pro bono publico,* and are compensated by public individual contributions for the service performed.

This company had practically converted itself by its low fares into an auxiliary of the state, in assisting in the spread and maintenance of education, by facilitating the transportation of school children at low fares. This was not an undue or an unreasonable preference *ipso facto*. It was in line with the spirit of our constitution and with the laws and immutable traditions of our state, making for the perpetuation of an enlightened citizenship based upon the education afforded by our schools. To insist that in the passage of an act designed merely to regulate this public service, it was within the contemplation of the legislator to condemn a manifest public benefit by converting it into a violation of law, and to thereby overturn a system and a condition most jealously guarded for centuries as the bulwark of our institutions, is to attribute to the legislative mind forgetfulness of or indifference to the fundamental policy and traditions of our government and our people.

A proper construction of this act must accord with its spirit and intent. 1 *Blacks.* 62; *Holy Trinity Church* v. *United States,* 143 *U. S.* 457. The clear intent and spirit of this legislation is to erect a tribunal or commission in the state with powers of administration and regulation, substantially similar within its sphere to those exercised by the interstate commerce commission, in which shall be vested the power to make the necessary investigation for the purpose of ascertaining not whether a preference has been given, as in this case, but whether in justice to the public the preference so accorded is "undue or unreasonable."

It is difficult to perceive why the special rate accorded to school children under this regulation of the company should be abrogated by this act, while the well-known regulation of railway companies of carrying small children free of charge remains unquestioned. If this act, *ex vi termini,* operates to abrogate the three cent fare regulation as a preference, *a fortiori* must it apply to a regulation which results in carrying persons free of charge, unless the power is lodged by the act with this commission to determine what is not "undue and unreasonable" as a preferential regulation.

The act of the railway company in this instance must, therefore, be considered as the increase of a rate of fare which was in existence when the statute became effective. Section 17 of the act, sub-division (*h*), confers upon the commission power "to hear and determine whether the said increase charge or alteration is just and reasonable." Such is the purpose of the order under review, and the legislature having conferred the power of regulation and administration upon the commission, this court will not interfere in the discharge of that duty, except, in the language of the thirty-eighth section of the act, "where it clearly appears that there was no evidence before the board to support reasonably such order or that the same was without the jurisdiction of the board." Neither of these conditions existing in this case, the order of the board of public utilities commission now under review will be affirmed.