These appeals present a question of statutory construction. The Unemployment Compensation Law of December 5, 1936 (Second Special Session of 1936), P. L. 2897, which provides for the payment of contributions by employers into the Unemployment Compensation Fund, exempts from its operation (section 4(j) *Page 51 
(5)) "service performed in the employ of the United States Government or of an instrumentality of the United States."[1] The Supreme Court of the United States has never precisely defined the phrase "instrumentality of the United States." Is a state bank which is a member of the Federal Reserve System such an instrumentality within the meaning of the act?
Fidelity-Philadelphia Trust Company, a corporation of the State of Pennsylvania and member of the Federal Reserve System, filed a bill in equity to restrain the Secretary of Labor and Industry of the Commonwealth from attempting to enforce the act against it. Several other trust companies in Philadelphia and Pittsburgh, being likewise Pennsylvania corporations and Federal Reserve members, brought similar proceedings. It is their contention that the word "instrumentality" is to be given its general dictionary meaning of a "means," "medium," or "agency." Defendant, on the other hand, maintains, on behalf of the Commonwealth, that the phrase "instrumentality of the United States," as used in the act, is intended to cover only those federal agencies which the State, by reason of the federal nature of our government, is impliedly prohibited from taxing. The court below dismissed the bills brought by the trust companies and they now appeal.
Although the act provides in form for a payment of "contributions," such enforced contributions are in reality excise taxes on the right to employ: Carmichael v. SouthernCoal Coke Co., 301 U.S. 495, 508; Steward Machine Co. v.Davis, 301 U.S. 548, 582, 583.
By the Federal Reserve Act of December 23, 1913, ch. 6, section 9, 38 Stat. 259, 12 U.S.C.A. section 321, a state bank or trust company may, on application, subscribe to the stock of a Federal Reserve Bank and become *Page 52 
a member of the Federal Reserve System, and by the same act,12 U.S.C.A. section 328, may withdraw from such membership on six months' notice. State banks or trust companies becoming members may be designated by the Secretary of the Treasury as depositaries of public money, and be employed as financial agents of the Government, and must perform all such reasonable duties, in those capacities, as may be required of them. Our Banking Code of May 15, 1933, P. L. 624, section 1001(11), empowers state banks and trust companies to become members of a Federal Reserve Bank, and (section 1019) for that purpose to purchase and hold the necessary qualifying stock, and to acquire and exercise all powers, not in conflict with the laws of the Commonwealth, which are conferred upon such member banks by the Federal Reserve Act; but otherwise they are to continue to be subject to all the liabilities and duties imposed upon them by the laws of the Commonwealth. The membership of a state bank in the Federal Reserve System is thus purely voluntary both in its inception and duration. In Hiatt v. United States,4 F.2d 374, 375, it was said: "The matter of affiliation between the Dickinson Trust Company and the Federal Reserve Bank, aside from the investment in stock, seems to present merely a business arrangement between the Federal Reserve Bank and the trust company, which was not made under compulsion, and was doubtless regarded as advantageous by both concerns. It was simply an arrangement made for the advancement and in the interests of the business for which the trust company was chartered." It is true that the Federal Reserve System could probably not perform its functions without the membership of an adequate number of state banks, and therefore, in a general sense, they may be considered to be public means or agencies to carry out a policy of the federal government; but the question still remains whether they are instrumentalities of the kind intended by the *Page 53 
use of that term in the Unemployment Compensation Law.
The approach to the solution of this question should be made in the light of the well known principle that language which provides exemptions from the general imposition of a tax must be strictly construed: Commonwealth v. Lowry-Rodgers Co.,279 Pa. 361, 366; Commonwealth v. Wark Co., 301 Pa. 150, 153;Sellers's Estate, 325 Pa. 377, 380.
When there is borne in mind the purpose of the Unemployment Compensation Law, as expressed in Article 1, section 3, thereof, which, as a declaration of public policy, asserts that the general welfare requires the exercise of the police powers of the Commonwealth for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, it is practically impossible to believe that the legislature intended to exempt banks and trust companies from the operation of the act except in so far as it was constitutionally compelled to do so. The employes of state banks and trust companies which are members of the Federal Reserve System are subject to the same risk of unemployment as other workers, are just as dependent upon their wages for the necessities of life and just as likely, when unemployed, to become charges upon the state and to suffer all the other ills which the Unemployment Compensation Law was designed to alleviate. Therefore, it being admitted that the legislature had the power to impose this tax upon such banks, it would appear to be highly unlikely that their exemption was intended; rather it would seem reasonable to suppose that the exemption was meant to cover only those governmental agencies which were created by the federal government, or are whollyowned by it, or are not operated, at least exclusively, forprivate profit but are engaged primarily in the performance of some essential governmental function, — a viewpoint which gains force from a statement *Page 54 
in the opinion of the United States Supreme Court in the recent case of Buckstaff Bath House Company v. McKinley, 60 Sup. Ct. Rep. 279, that "The exclusion of federal instrumentalities from the scope of the Federal Act, and hence from the complementary state systems, emphasizes the purpose to exclude from this statutory system only that well defined and well known class of employers who have long enjoyed immunity from state taxation." Indeed, if the word "instrumentality" be taken in its broader sense, the exemption would cover every person or corporation contractually engaged to perform services helpful to the government, as, for example, to manufacture its war supplies, to build its ships, or to transport materials necessary or useful in the execution of its constitutional powers.
In the cases which have arisen in the state courts in regard to unemployment compensation laws and similar legislation, it has uniformly been held that the term "instrumentality of the United States" does not have a general but a technical meaning and does not apply to financial institutions which become members of a Federal Home Loan Bank or a Federal Reserve Bank:Capitol Building Loan Association v. Kansas Commission ofLabor and Industry, 148 Kans. 446, 83 P.2d 106;Unemployment Compensation Commission of North Carolina v.Jefferson Standard Life Insurance Co., 215 N.C. 479,2 S.E.2d 584; Unemployment Compensation Commission of NorthCarolina v. Wachovia Bank Trust Co., 215 N.C. 491,2 S.E.2d 592; Western Bank Trust Co. v. Ohio UnemploymentCompensation Commission, Franklin County Court of Appeals, Ohio, opinion filed Oct. 9, 1939. Of course, Congress may employ state corporations as "instrumentalities of the United States" in the broadest sense of that term, (Clallam County v.United States, 263 U.S. 341; Westfall v. United States,274 U.S. 256, 259), and may make frauds that impair their efficiency crimes (Westfall v. United States, supra; Hiatt v. United States, *Page 55 4 F.2d 374; Weir v. United States, 92 F.2d 634; Dohertyv. United States, 94 F.2d 495), but such corporations are usually private enterprises in which the profit motive is dominant, and to which incidentally are assigned functions of the federal government; they differ sharply from instrumentalities, in the more exact legal and historic use of that term, which are created by the federal government itself for the primary and direct purpose of carrying out its policies. Thus in Federal Land Bank v. Priddy, 295 U.S. 229,234, it was said by the United States Supreme Court of joint stock land banks that "they are privately owned corporations organized for profit to their stockholders through the business of making loans on farm mortgages. There is nothing in their organization and powers to suggest that they are government instrumentalities."[2]
Apart from what has heretofore been said, there is another aspect of the question which, in our opinion, is conclusive of the issue. There are, no doubt, governmental agencies so intimately connected with the exercise of a power or the performance of an indispensable function of the government that any taxation of them would be such a direct interference as plainly to be beyond the reach of the taxing power of the state: *Page 56 Metcalf Eddy v. Mitchell, 269 U.S. 514, 524; James v. DravoContracting Co., 302 U.S. 134, 157; Helvering v. Gerhardt,304 U.S. 405, 424. Ordinarily, however, federal agencies are exempted from state taxation only in so far as it may impair their efficiency in performing the functions by which they serve the government.[3] Admittedly, this would not occur in the case of the Unemployment Compensation Law as far as state member banks of the Federal Reserve System are concerned, nor has Congress ever assumed to restrict the power of the several states to tax such banks, as it has done in the case of a multitude of governmental agencies which it has thus recognized as being instrumentalities more or less vital to the execution of its policies.[4] Both *Page 57 
parties to the present litigation agree that the State has thepower to impose upon such banks the tax provided for in the Unemployment Compensation Law. If that law, therefore, were to exempt state banks which are members of the Federal Reserve System, it would be because the legislature had voluntarily chosen to do so and not because of any constitutional compulsion. Such an exemption would violate Article IX, section 1, of the Constitution of Pennsylvania, which requires all taxes to be uniform upon the same class of subjects. True, the legislature has the right to make a classification for the purpose of taxation, but not arbitrarily; the classification must rest upon a distinction which is real and which bears a reasonable relation to the tax in respect to which it is proposed: Schoyer v. Comet Oil Refining Co., 284 Pa. 189,197; Turco Paint Varnish Co. v. Kalodner, 320 Pa. 421, 432. There is no difference, so far as the problems and the evils of unemployment are concerned, between state banks and trust companies which are members of the Federal Reserve System and other banks and trust companies. As a matter of fact, probably an overwhelming majority of the employes of the member banks and trust companies are engaged exclusively, or at least in large measure, in the same non-governmental activities of these institutions as are the employes of non-member banks and trust companies. In the case of national banks, the State was obliged to grant an exemption because of constitutional limitations, there being only *Page 58 
a partial waiver by Congress of the immunity of such banks from state taxation (Owensboro National Bank v. Owensboro,173 U.S. 664, 668; First National Bank v. Anderson, 269 U.S. 341, 347;Iowa-Des Moines National Bank v. Bennett, 284 U.S. 239, 244),[5]
but in the case of member banks of the Federal Reserve System there is no such excuse for exempting them, nor any reason whatever to distinguish them from non-member banks as far as the Unemployment Compensation Law is concerned. Therefore, to grant them an exemption denied to non-member banks would be wholly arbitrary and a violation of the constitutional requirement for tax uniformity upon the same class of subjects.[6]
Since the rule is, "if there are two constructions which can be placed upon an act of assembly, one of which will make it constitutional and the other unconstitutional, the former will always be preferred" (Carr v. Ætna Accident LiabilityCo., 263 Pa. 87, 91), and since there is now a statutory mandate that, in ascertaining the intention of the legislature in the enactment of a law, the court may be guided by the presumption "that the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth" (Statutory Construction Act of May 28, 1937, P. L. 1019, section 52 (3)), it follows that the exemption here in question could not have been intended by the legislature to apply to instrumentalities of the United States other than those which, by reason of the inhibitions caused by the federal structure of our government, the State is prevented from taxing except to the extent expressly permitted by Congress. *Page 59 
It is our conclusion that appellants are not instrumentalities of the United States within the meaning of the Unemployment Compensation Law and therefore are not relieved from payment of the contributions provided by that act.
Appellants ask that, if they are not exempted from the operation of the act, the Commonwealth should at least be restrained, until final adjudication of the present case, from enforcement against them of the penal provisions of section 803 and the provision in section 308 for interest at the rate of one per cent instead of one-half of one per cent a month on unpaid contributions. As far as section 803 is concerned, the penalties there provided for apply only after a conviction in summary proceedings, and as no such proceedings have been instituted this question is academic. In regard to section 308, however, since appellants had reasonable cause to seek an interpretation of the statute, and since their resort to the courts was made in good faith, they are entitled to relief, pendente lite, from an interest charge over and above the rate of six per cent per annum: see Fidelity-Philadelphia TrustCompany's Appeal, 337 Pa. 34. An interest rate of one per cent per month must be regarded as so disproportionate to the actual detriment resulting to the Commonwealth from its failure to receive the contributions when due as to be penal in nature rather than compensatory. While, of course, it is permissible for the State to prescribe such an interest charge in case of default after the proper interpretation of the act has been judicially established, harsh penalties or unusual interest rates cannot be imposed, pending litigation intended to test the construction or validity of an act, so as to deter or intimidate parties affected thereby from resorting to the courts for that purpose: Ex parte Young, 209 U.S. 123, 147;Wadley Southern Ry. Co. v. Georgia, 235 U.S. 651, 662, 663;Pacific Mail S. S. Co. v. Schmidt, 241 U.S. 245, 250; OklahomaOperating Co. v. Love, *Page 60 252 U.S. 331, 336, 337. Upon prompt payment, therefore, of the contributions now due, with interest thereon of one-half of one per cent per month, appellants are entitled to be relieved from payment of interest in excess of that rate. It is presumed that no formal injunction to that effect need issue against defendant or other State authorities charged with the enforcement of the act.
The decrees are affirmed; costs to be paid by appellants.
[1] The same exemption is contained in the Federal Social Security Act of August 14, 1935, 49 Stat. 620, section 811(b)(6) and section 907(c)(5).
[2] We are not impressed by the argument that because the Commissioner of Internal Revenue had made a ruling that the phrase "instrumentality of the United States" included state member banks of the Federal Reserve System, the legislature of Pennsylvania, in subsequently enacting the Unemployment Compensation Law, must have intended the phrase to have the meaning ascribed to it by the Commissioner. The latter is an administrative officer and not a judicial tribunal, and therefore the principle of statutory construction sought to be invoked does not apply: see Public Service Ry. Co. v. Board ofPublic Utility Commissioners, 81 N.J.L. 363, 80 A. 27;People's Gas Light and Coke Co. v. Ames, 359 Ill. 152,194 N.E. 260; Unemployment Compensation Commission of North Carolina v.Wachovia Bank Trust Co., 215 N.C. 491, 2 S.E.2d 592.
[3] National Bank v. Commonwealth, 76 U.S. 353, 362; Thomson v.Pacific Railroad, 76 U.S. 579, 590, 591; Railroad Company v.Peniston, 85 U.S. 5, 30, 36; Farmers' Mechanics' NationalBank v. Dearing, 91 U.S. 29, 34; Baltimore Shipbuilding DryDock Co. v. Baltimore, 195 U.S. 375, 382; Fidelity DepositCo. of Maryland v. Pennsylvania, 240 U.S. 319, 323;Metcalf Eddy v. Mitchell, 269 U.S. 514, 523, 524; EducationalFilms Corporation v. Ward, 282 U.S. 379, 391, 392; Alward v.Johnson, 282 U.S. 509, 514; Susquehanna Power Co. v. State TaxCommission of Maryland, 283 U.S. 291, 294; Fox Film Corporationv. Doyal, 286 U.S. 123, 128; Broad River Power Co. v.Query, 288 U.S. 178, 180; Federal Compress Warehouse Co. v.McLean, 291 U.S. 17, 23; James v. Dravo Contracting Co.,302 U.S. 134, 156, 157; Helvering v. Gerhardt, 304 U.S. 405, 424;Graves v. People of State of New York, 306 U.S. 466, 487.
[4] For example: National Banks, 12 U.S.C.A. section 548; Federal Deposit Insurance Corporation, 12 U.S.C.A. section 264(p); Federal Reserve Banks, 12 U.S.C.A. section 531; Federal Land Banks and National Farm Loan Associations,12 U.S.C.A. section 931; Federal Farm Mortgage Corporation, 12 U.S.C.A. section 1020f; Federal Intermediate Credit Banks,12 U.S.C.A. section 1111; Central Bank for Coöperatives, Production Credit Corporations, Production Credit Associations, and Banks for Coöperatives, 12 U.S.C.A. section 1138c; National Agricultural Credit Corporation, 12 U.S.C.A. section 1261; Federal Home Loan Banks, 12 U.S.C.A. section 1433; Home Owners' Loan Corporation, 12 U.S.C.A. section 1463(c); Federal Savings and Loan Associations, 12 U.S.C.A. section 1464(h); National Mortgage Associations, 12 U.S.C.A. section 1722; Federal Savings and Loan Insurance Corporation, 12 U.S.C.A. section 1725(e); Federal Credit Unions, 12 U.S.C.A. pocket part, section 1768; United States Housing Authority, 42 U.S.C.A. pocket part, section 1405(e); Farmers' Home Corporation,7 U.S.C.A. section 1014(i); Federal Crop Insurance Corporation,7 U.S.C.A. section 1511; Reconstruction Finance Corporation, 15 U.S.C.A. section 610.
[5] Whether the amendments of August 10, 1939, to the Federal Security Act subject national banks to state unemployment compensation laws need not presently be discussed.
[6] As of December 31, 1937, but 78 of Pennsylvania's 390 state banks and trust companies were members of the Federal Reserve System.