## Fleishmann's Vienna Model Bakery v. Torquato

*McNees, Wallace & Nurick,* for plaintiffs.

*Herbert B. Cohen,* Attorney General, *Leon Ehrlich,* Deputy Attorney General, *Morley W. Baker,* Special Deputy Attorney General, for Commonwealth.

NEELY, J., March 28, 1956.—This matter is before the court on defendants' preliminary objections to plaintiffs' complaint in equity. Defendants are the Secretary of Labor and Industry and his deputy, the Executive Director of the Bureau of Employment Security in the Department of Labor and Industry, the chief of the accounting section of that bureau and two of his assistants, officials of this Commonwealth who are charged with the duty of administering the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §751, et seq. Plaintiffs' bill in equity purports to be a class bill filed by these plaintiffs "individually and on behalf of all other employers similarly situated."

Plaintiffs aver that they are employers subject to the Unemployment Compensation Law, and that on December 16, 1955, one of the plaintiffs, Fleishmann's Vienna Model Bakery, mailed to the Bureau of Employment Security at Harrisburg its check in the amount of $405.83 in payment of its unemployment compensation contributions due on wages paid by it in the fourth quarter of the calendar year 1955. It is averred that plaintiff, The Parkway Baking Company, mailed to the said bureau on December 15, 1955, $160 in payment of its contributions due on wages taxable in the fourth quarter of the calendar year 1955. It is further averred that approximately 3,500 other employers in Pennsylvania made similar payments of unemployment compensation contributions due on the taxable wages paid in the fourth quarter of 1955 in the total amount of approximately $5,150,000.

The complaint avers that the Secretary of Labor and Industry, through the press, stated that these contributions from approximately 3,500 employers were "unacceptable to the Pennsylvania Unemployment Compensation Fund," and also stated that "the Fund Balance on December 21, 1955, was $347,123,087 and would go down to $345,000,000 by the end of 1955." Averment is made that under the Unemployment Compensation Law, if the fund balance of the Pennsylvania Unemployment Compensation Fund is less than $350,000,000 at the end of a calendar year, the rate of contributions payable by many employers in Pennsylvania will automatically rise to a higher level under section 301(c) of the Unemployment Compensation Law, 43 PS §781, as last amended by Act of March 30, 1955, P. L. 6.

Plaintiffs allege that the refusal of defendants to include in the fund balance their payments and those of approximately 3,500 other employers totaling the said sum of $5,150,000 is arbitrary, capricious and contrary to law, and that the failure to include this last named sum in that fund balance will reduce the fund balance to less than $350,000,000, with the result that the contributions to be paid by plaintiffs, and many other employers, will be greatly increased, in the total amount of approximately $45,000,000.

It is specifically pleaded that defendants' conduct in failing to include the questioned payments made in 1955 is unlawful conduct on the part of defendants, as a result of which the contribution rate of plaintiff, Fleishmann's Vienna Model Bakery, will be increased approximately 80 percentum, and the contribution rate of plaintiff, The Parkway Baking Company, will be increased approximately 87½ percentum. It is averred that many employers in Pennsylvania will sustain an unemployment compensation contribution rate increase of as much as 89.9 percentum for the

year 1956 if the Bureau of Employment Security fails to include these contributions of $5,150,000 in the 1955 fund balance as of December 31, 1955.

Plaintiffs by their bill allege that they are interested in compelling defendants to perform their legal duty to include the sum of $5,150,000 in contributions in the Pennsylvania Unemployment Compensation Fund as of the end of the calendar year 1955 for the purpose of determining the fund balance. Plaintiffs seek to enjoin and restrain defendants from attempting to collect or enforce unemployment contribution rates, as to themselves and other employers similarly situated, on any basis excluding the payments totaling $5,150,000 from the Pennsylvania Unemployment Compensation Fund. And also they ask us to grant a mandatory injunction ordering defendants to include in the Pennsylvania Unemployment Compensation Fund as of the end of the calendar year 1955 the said sum of $5,150,000.

Defendants have filed preliminary objections to this bill in equity. These preliminary objections are: (1) In the nature of a petition raising questions of jurisdiction; (2) in the nature of a demurrer; (3) in the nature of a motion for more specific pleading; and (4) in the nature of a motion to strike off.

Defendants' objection to the jurisdiction (1) is that plaintiffs have an adequate remedy at law to appeal to this court in subsections $(e)$, $(f)$ and $(g)$ of section 301 of the Unemployment Compensation Law, as amended, 43 PS §781 $(e)$, $(f)$ and $(g)$. These subsections give the right of appeal to this court where the employer deems a rate of contribution determined by the department (Department of Labor and Industry) is incorrect. Defendants contend also that the United States Government is an indispensable party. The preliminary objection in the nature of a demurrer (2) is to the effect that plaintiffs do not allege a clear

legal right and corresponding duty in defendants, since there is no allegation that the payments in question were due and owing when made, and further the complaint does not state a cause of action because it does not aver that any new contribution rates have been fixed. Defendants contend that the motion for more specific pleading (3) should be granted because plaintiffs do not aver the manner in which the amounts of $405.83 and $160 respectively were calculated, nor that said amounts were due and owing when the checks were mailed. The preliminary objection in the nature of a motion to strike off (4) is based upon the contention that since defendants have averred merely a press release, the allegations are irrelevant, impertinent and scandalous, and form no basis for court action, and for the further reason that the court has no power to make any adjudication concerning the rates of the additional 3,500 employers.

The ultimate outcome of this case depends upon the correct fund balance at the end of the calendar year 1955. Was that balance at least $350,000,000, or had the balance fallen below that figure? Because of the importance in this case of the balance in the Pennsylvania Unemployment Compensation Fund at the end of the calendar year 1955, it is a matter of first importance to understand the provisions of the act concerning the rate of contribution of employers, how that rate is determined and how it is affected by the fund balance.

There have, of course, been extensive amendments to the Unemployment Compensation Law of 1936. By the amendment of May 26, 1943, P. L. 639, sec. 301 (c), 43 PS §781, et seq., experience rating first came into existence: Albright Unemployment Compensation Case, 162 Pa. Superior Ct. 98, 104 (1948); Boyertown Burial Casket Co. v. Commonwealth, 366 Pa. 574 (1951), affirming this court's decision in 61 Dauph. 1

(1950, Smith, P. J.). In Albright Unemployment Compensation Case, Judge Arnold stated, at page 104:

"Prior to 1943 intervenor's tax was 2.7%. 'Experience rating' effected, according to a formula, an *adjustment* of the contribution, which *reduced* this rate, the reduction to become greater as the 'unemployment' of the employer's workmen became less. It was a reward and not a penalty, for without 'experience rating' the employer's tax would remain at 2.7%, and in the subsequent amendments of 1943 and 1945 its tax was fixed at this rate *unless* adjusted."

We are concerned in this case with the experience ratings of employers and must consider section 301(c) as last amended by Act of March 30, 1955, P. L. 6. By the 1955 amendment, the contributions are to be adjusted from the maximum rate of 2.7 percentum of the wages paid by the employer to the minimum rate of .5 percentum, depending upon the employer's unemployment compensation experience. When, as of the computation date, in this case June 30, 1955, 43 PS §753 (z.3), there is a credit balance in the employer's reserve account, then the employer's contribution rate is to be determined in accordance with the table specified in section 301(c) on the basis of the fund balance at the end of the preceding calendar year (December 31, 1955 in this case).[1] Where the fund

---

[1] The employer's reserve account is established and maintained and the credit balance in that account determined in the manner provided in article III, section 302 of the amendatory Act of May 26, 1949, P. L. 1854, 43 PS §782. The credits and charges in the employer's reserve account are based upon a compound of the individual employer's record and the record of all other employers of covered employment in the State. Section 302 sets forth with particularity the manner in which these credits and charges are to be computed.

Under section 301(c) of the 1955 act, the ratio of the balance in the employer's reserve account to his average annual payroll establishes the employer's reserve for payment of unemployment

balance is at least $450,000,000, the lowest rate set forth in line A of the table applies. Where the fund balance is not less than $350,000,000, then a higher rate, as set forth in line B, would apply. And if the fund balance is not less than $300,000,000, then a still higher rate, set forth in line C, would apply. It is provided in the act that if the fund balance falls below $300,000,000, then the highest rate 2.7 percentum, applies to all employers.

Plaintiffs' contention essentially is that by the payment of contributions of $5,150,000 by 3,500 employers before the end of the calendar year 1955, the fund balance was at least $350,000,000, and that plaintiffs' compensation rates were to be determined by the application of the rates set forth in line B of the table, and not the higher rates, as set forth in line C of the table in section 301(c) of the amendment of 1955. Defendants, on the other hand, press their contention that the contributions were unacceptable for the year 1955, and that the fund balance then was less than $350,000,000 and the higher contribution rates specified in line C of the table should apply.

In the light of this discussion of the method by which the contribution rate is fixed, we may now pro-

---

compensation. Where that reserve is highest, the rate is .5 percentum of the wages paid, the lowest rate. And the rate increases (according to the table in this section, vertical lines) as the reserve diminishes. When the reserve as specified in this section is lowest, the rate is 2.7 percentum, the highest rate. The rates of all employers are further varied by the safety factor which is based upon the balance in the unemployment compensation fund at the end of a calendar year (horizontal lines A, B and C in the table).

We are here concerned, on the basis of the complaint, with the question as to whether horizontal line B of this table should be applied for the purpose of determining the contribution rate in 1956 because the fund balance at the end of the calendar year 1955 was $350,000,000 on December 31, 1955, or whether the higher rates carried on line C of the table should be applicable because the fund balance was less than $350,000,000 on December 31, 1955.

ceed to a consideration of the first preliminary objection, namely, that this court is without jurisdiction to entertain plaintiffs' bill in equity asking for injunctive relief. ". . . The Unemployment Compensation Law represents 'the exercise of the police powers of the Commonwealth' to abolish: 'Economic insecurity due to unemployment [which] is a serious menace to the health, morals, and welfare of the people of the Commonwealth.' . . . 43 PS §752.": MacFarland v. Unemployment Compensation Board of Review, 158 Pa. Superior Ct. 418, 421 (1946). Also see Dawkins Unemployment Compensation Case, 358 Pa. 224, 234 (1948).

Plaintiffs contend that they and 3,500 other employers made contributions to the unemployment compensation fund on account of taxable wages in the last quarter of 1955, to bring the fund balance to a sum in excess of $350,000,000. If we will bear in mind the nature of these contributions, then the question of our jurisdiction in this action in equity will come into a clear focus. In Department of Labor and Industry v. New Enterprise Rural Electric Cooperative, Inc., 352 Pa. 413 (1945), the Supreme Court said, at pages 415-416:

"This Court has upon two occasions stated that unemployment compensation contributions constitute an excise tax upon the right to employ: Fidelity-Philadelphia Trust Company v. Hines, 337 Pa. 48, 51; Commonwealth v. Perkins, 342 Pa. 529, 531. That the tax be designated as contribution or any other name does not render it any less a tax upon the right to employ. See Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 508."

See also Commonwealth of Pennsylvania v. Perkins, 41 D. & C. 55, affirmed in 342 Pa. 529 (1941): Bowman v. Department of Labor and Industry, 60 Dauph. 310 (1949); Fidelity-Philadelphia Trust Company v. Hines,

337 Pa. 48 (1940).; York School District Appeal, 367 Pa. 279 (1951). Notwithstanding, then, that the Unemployment Compensation Law refers to contributions, these contributions are to be treated as taxes, and we are therefore involved in this case with the question as to the lawfulness of assessing taxes.

Plaintiffs allege that because the fund balance on December 31, 1955, was at least $350,000,000, they are entitled to be taxed in 1956 according to line B of the table in section 301(c), whereas defendants propose to tax at a higher rate (line C) by improperly considering that the fund balance was less than $350,000,000. We are, of course, in no sense expressing any views concerning the merits of these contentions because those merits are not now before us. We can do no more than consider the allegations of the pleadings. And, on the basis of plaintiffs' bill in equity, it is alleged that defendants propose to impose a tax on these plaintiffs and 3,500 other employers similarly situated at an unlawful rate.

If we consider, as we must, under the clear allegations in plaintiffs' bill that it is averred that defendants propose to levy a tax at an unlawful rate, does this court have jurisdiction to afford equitable relief? The answer to this question must be in the affirmative. This court has held on numerous occasions that we have the right to enjoin the enforcement of an invalid statute: Fidelity-Philadelphia Trust Company v. Bashore, 44 Dauph. 380 (1937); Bayuk Cigars, Inc. v. Chestnut, 55 Dauph. 134, 141-144 (1944); Dolan College of Embalming, Inc. v. Vaux, 61 Dauph. 350 (1951); Cavanaugh v. Gelder, 60 Dauph. 171, 176, 177 (1949). Cf. Chester County Mutual Insurance Company v. Messner, 63 Dauph. 46, 52 (1952).

And it is equally clear that this court has power to enjoin the collection of a tax where there is no power

to levy the tax: Pittsburgh, Allegheny and McKees Rocks Railway Co. v. Township of Stowe, 252 Pa. 149 (1916); Wynnefield United Presbyterian Church v. City of Philadelphia, 348 Pa. 252 (1944); Commonwealth v. Dauphin County, 354 Pa. 556 (1946). See this court's decision in Roy Stone Transfer Corporation v. Messner, 64 Dauph. 240 (1953), refusing to restrain the collection of a tax which plaintiff claimed was unconstitutional, and the Supreme Court's decision, 377 Pa. 234 (1954), reversing us with a procedendo, the effect of the Supreme Court's decision being that equitable relief should be granted the plaintiff from the payment of the tax therein involved. The case before us does not involve the question as to whether there is any power in defendants to levy the tax, but does involve the question as to whether or not they can levy the tax at a rate higher than is authorized by law.

In English v. Robinson Township School District, 358 Pa. 45 (1947), our Supreme Court took original jurisdiction of a bill to enjoin a school district from levying a tax, it being contended that the statute was unconstitutional. The court said, at page 55:

". . . it has long been settled in this Commonwealth that a plaintiff may go into equity to restrain attempted taxation for want of power to tax: . . . ."

In Delaware, Lackawanna & Western R. R. Co. v. Luzerne County Commissioners, 245 Pa. 515, 517 (1914), the Supreme Court said: ". . . Equity has power in a proper case to restrain the collection of a tax, but it is a power that should be cautiously exercised, because as a general rule there is an adequate remedy at law. Equity will only intervene in such a case where there is either want of power to tax or a disregard of imperative constitutional requirements: . . ."

And Mr. Justice Linn, speaking for the Supreme Court, in Jamison Coal & Coke Company v. Unity Township School District, 362 Pa. 389, 392 (1949), stated the rule as follows: ". . . It is too well settled for argument that equity will enjoin taxation for want of power to tax: compare Dougherty, Trustee, v. Philadelphia et al., 314 Pa. 298, . . ."

The allegations in this bill involve the question of the power of defendants to collect a tax at a rate higher than would be justified if the fund balance is legally determined to be in an amount of not less than $350,000,000.

There are other reasons, however, why the court has jurisdiction in this case where the exact contribution rates have not yet been established, and plaintiffs seek in their own behalf, and in behalf of the other 3,500 employers, to restrain defendants from putting into effect the higher rates. In Bell Telephone Company of Pennsylvania v. Driscoll, 343 Pa. 109, 112 (1941), the Supreme Court said:

"We have no doubt about the right of the Court of Common Pleas of Dauphin County in the exercise of its equitable powers to entertain a bill to enjoin an administrative agency of the Commonwealth from exercising powers not conferred on it or unconstitutionally conferred on it." See also Germantown Trust Company v. Powell, 260 Pa. 181 (1918); York Railways Company v. Driscoll, 331 Pa. 193 (1938); Martin v. Baldy, 249 Pa. 253 (1915).

Where it does not appear that the contribution rates have even been established for 1956, from which any appeal could be taken to this court, it is not shown that the appeal sections, 301 (e), (f) and (g) of the act, would provide any adequate and sufficient remedy to determine this matter as expeditiously as it should be decided: West Penn Railways Company v. Hamilton, 53 Dauph. 262 (1942). Furthermore, this is a class bill

filed under Pa. R. C. P. 2230, and the decision of the questions involved in this action in equity will avoid a multiplicity of suits. See Western Pennsylvania Hospital v. Lichliter, 340 Pa. 382 (1941).

Defendants also deny the jurisdiction of this court because they claim that the United States Government is an indispensable party, by virtue of its interest in the administration of the Unemployment Compensation Law. It seems to us that in making this contention, defendants misconstrue the nature of this action. This is not an action against the Commonwealth of Pennsylvania. We would have no power to entertain a suit against this Commonwealth. See Bell Telephone Company of Pennsylvania v. Lewis, 313 Pa. 374 (1934). And no more could this be an action against the United States Government. The function of the Federal officials is well stated in Sturdevant Unemployment Compensation Case, 158 Pa. Superior Ct. 548, 553 (1946), as follows:

"The administration of the laws (Unemployment Compensation Laws) is committed to agencies designated or organized by each state, over which the federal Social Security Board exercises advisory and supervisory functions." (Parenthesis supplied.)

This is an action against the individual officials. Their titles as set forth in this action are descriptio personae, and injunctive relief, both as to restraint and mandatory affirmative relief, is sought by plaintiffs. For a case in which the Supreme Court in equity coupled a restraining order with additional mandatory injunctive relief, see McIntosh Road Materials Co. v. Woolworth, 365 Pa. 190 (1950).

For these reasons, we overrule the objection to our jurisdiction. The complaint must be deemed sufficient to require defendants to answer the allegation in the bill that they propose to collect an unlawful tax. For

the reasons already given, the demurrer cannot be sustained. The preliminary objection in the nature of more specific pleading has no merit. The manner in which plaintiffs arrive at the figures $405.83 and $160 respectively, which were paid to defendants by check, would be a matter of proof, as are all the other matters specifically mentioned in this objection.

Plaintiffs were not required to attach any press release to their complaint, as contended by defendants. Whatever notice plaintiffs had concerning the fund balance at the end of the calendar year 1955 would be a matter of proof and not pleading. Nor can we agree that there is anything irrelevant, impertinent or scandalous in the allegations in plaintiffs' complaint. The complaint fairly raises legal and factual issues that should be disposed of on their merits.

For all of the reasons herein mentioned, defendants' preliminary objections must be overruled, and accordingly we enter the following

### Order

And now, March 28, 1956, the preliminary objections of defendants are herewith overruled and leave is granted to defendants to file their answer within 20 days.

### Adjudication

NEELY, J., November 30, 1956. — The corporate plaintiffs have instituted this proceeding in equity by complaint. Defendants are the Secretary of Labor and Industry and his deputy, the Executive Director of the Bureau of Employment Security in the Department of Labor and Industry, the chief of the accounting section of that bureau, and two of his assistants, officials of this Commonwealth who are charged with the duty of administering the Unemployment Compensation Law of December 5, 1936, P. L. (1937)

2897, as amended, 43 PS §751, et seq; the latest amendment being the Act of March 30, 1955, P. L. 6, 43 PS §753, et seq. Plaintiffs' complaint purports to be a class bill filed by these plaintiffs individually and on behalf of all other employers similarly situated.

Plaintiffs aver by their complaint that they are employers subject to the Unemployment Compensation Law, and that on December 16, 1955, one of the plaintiffs, Fleishmann's Vienna Model Bakery, mailed to the Bureau of Employment Security at Harrisburg its check in the amount of $405.83 in payment of its unemployment compensation contributions due on wages paid by it in the fourth quarter of the calendar year 1955. It is averred that plaintiff, The Parkway Baking Company, mailed to said bureau on December 15, 1955, $160 in payment of its contributions due on wages paid in the fourth quarter of the calendar year 1955. It is further averred that approximately 3,500 other employers in Pennsylvania made similar payments of contributions due on wages paid by them in the fourth quarter of 1955 in the total amount of approximately $5,150,000.

The complaint avers that the Secretary of Labor and Industry, through a press release dated December 28, 1955, stated that these contributions from approximately 3,500 employers "were unacceptable to the Pennsylvania Unemployment Compensation Fund," and also stated that "the Fund Balance on December 21, 1955 was $347,123,087 and would go down to $345,-000,000 by the end of 1955." Averment is made that under the Unemployment Compensation Law, if the fund balance is less that $350,000,000 at the end of a calendar year, the rate of contributions for the succeeding year payable by many employers in Pennsylvania will automatically rise to a higher level under section 301(c) of the 1955 amendment, 43 PS §781.

Plaintiffs allege that the refusal of the defendants to include in the fund balance as of December 31, 1955, their payments, and those of 3,500 other employers totaling approximately $5,150,000, is arbitrary, capricious and contrary to law, and that the failure to include this last named sum in the fund balance will reduce that balance to less than $350,000,000, with the result that the contributions in 1956 to be paid by plaintiffs and many other employers will be greatly increased, the total amount of the increase being approximately $45,000,000.

It is specifically pleaded that defendants' conduct in failing to include the questioned payments made in 1955 is unlawful conduct on the part of defendants, as a result of which the contribution rate of plaintiff, Fleishmann's Vienna Model Bakery, will be increased approximately 80 percentum, and the contribution rate of plaintiff, The Parkway Baking Company, will be increased approximately 87½ percentum. It is averred that many employers in Pennsylvania will sustain an unemployment contribution rate increase of as much as 89.9 percentum for the year 1956 if the Bureau of Employment Security fails to include these contributions of $5,150,000 in the 1955 fund balance as of December 31, 1955.

Plaintiffs by their bill allege that they are interested in compelling defendants to perform their legal duty to include the sum of $5,150,000 in the fund balance as of December 31, 1955. Plaintiffs seek to enjoin and restrain defendants from attempting to collect or enforce unemployment contribution rates as to themselves, and other employers similarly situated, on any basis exceeding the payments of $5,150,000 to the unemployment compensation fund. And also, they ask us to grant a mandatory injunction ordering defendants to include in the fund balance

as of the end of the calendar year 1955 the said sum of $5,150,000.

The answer of defendants states that the balance in the unemployment compensation fund, exclusive of the prepayments made by plaintiffs and others, as of December 31, 1955, was less than $350,000,000. Defendants aver that the unemployment contributions payable for the year 1956 are based on the fund balance as of December 31, 1955, excluding prepayments of contributions for the fourth quarter of 1955 which were payable on or before January 31, 1956. Defendants deny that the collection of any unemployment contributions in 1956, based upon such balance, is in violation of the rights of plaintiffs, or any employers subject to the contribution provisions of the Unemployment Compensation Law.

It is averred specifically that the actual amount of contributions due for the fourth quarter of 1955 by Fleishmann's Vienna Model Bakery, one of the plaintiffs herein, was $418.73, instead of $405.83 as pleaded in paragraph 11 of plaintiffs' complaint, and further that the actual amount of contributions due for the fourth quarter of 1955 from The Parkway Baking Company, one of the plaintiffs, was $211.78, instead of the sum of $160 as pleaded in the 12th paragraph of the complaint.

Defendants by way of further answer to the complaint plead new matter. It is averred therein that the Attorney General by formal opinion notified defendants that they could not legally include as part of the unemployment compensation fund advance payments made prior to December 31, 1955, because these contributions are payments which, according to the rules and regulations of the department, were not due until January of 1956 when the reports for the fourth quarter of 1955 were required to be filed with the department.

It is averred that the total amount of prepayments forwarded by plaintiffs and other employers to the Bureau of Employment Security prior to December 31, 1955, was $5,482,839.54, although their contribution reports filed by them subsequent to that date showed the amount due for the fourth quarter of 1955 to be $5,189,591.49. It is averred that the fund balance as of December 31, 1955, as shown by the records of the Bureau of Employment Security, was $345,101,495, but that on account of unemployment benefits accrued on or before December 31, 1955, checks in payment of such benefits were forwarded to the Treasury Department of the Commonwealth of Pennsylvania for signature as follows:

December 30, 1955 ................$748,802.60
January 3, 1956 ..................$762,129.00
January 4, 1956 ..................$770,082.78

The answer avers that these checks for compensation benefits, accrued but unpaid prior to December 31, 1955, would reduce the balance in the Pennsylvania Unemployment Compensation Fund as of December 31, 1955, to $342,820,480.62, that the balance in the unemployment compensation fund as of December 31, 1955, less accrued but unpaid unemployment compensation benefits, and including prepayments made in accordance with the employers' fourth quarterly reports, would be $348,010,072.11. Defendants claim that plaintiffs are not entitled to any equitable relief and ask that their bill be dismissed

The parties have entered into a stipulation of facts, and pursuant to their agreement we accept this stipulation as containing undisputed facts in this case. Plaintiffs' requests for findings of fact are in accordance with the stipulation, and are all affirmed, and defendants' requests for findings of fact and conclu-

sions of law are likewise affirmed. The stipulation sets forth all the facts essential to our decision.

## Discussion

It is unquestioned that the fund balance, as computed by defendants, was below $350,000,000 on December 31, 1955. By their stipulation, the parties agree that on this date on the records of the bureau of employment security, the fund balance, exclusive of any prepayments, was $345,101,495. The fund balance has always been computed on a cash basis.

It is also admitted that the prepayment of the fourth quarter of 1955 contributions forwarded by plaintiffs and other employers to the bureau of employment security in December, 1955, amounted to $5,482,939.-54, and that the employers' reports of unemployment contributions for the fourth quarter of 1955 were filed in January of 1956, the amount due being $5,-189,591.49.

The table that governs the employer's rate of contribution is set forth in section 301(c) of the 1955 amendment, 43 PS §781(c). The contributions for a calendar year are to be adjusted from the maximum of 2.7 percentum of the wages paid by the employer, to the minimum of .5 percentum, depending upon the employer's unemployment compensation experience. When there is a credit balance in the employer's reserve account, the employer's contribution rate for a given year is to be determined in accordance with the table specified in section 301(c) of the 1955 amendment.[2] The rates of all employers, however, are varied

---

[2] The employer's reserve account is established and maintained, and the credit balance in that account is determined, in the manner provided in section 302 of the Amendatory Act of May 26, 1949, P. L. 1854, 43 PS §782, and subsequent amendments. The credit balance is computed as of June 30th of the year prior to the effective date of the rates. Since we are here dealing with 1956 rates, the computation date involved herein is June 30, 1955,

by the safety factor which is based upon the fund balance at the end of the immediately preceding calendar year, schedules A, B, and C, horizontal lines in the table. We are here concerned with contributions for the year 1956.

In a given year, where the fund balance at the end of the immediately preceding calendar year is at least $450,000,000, the lowest rate set forth in schedule A of the table applies. Where the fund balance is not less than $350,000,000, then a higher rate, schedule B, is in force. And if the fund balance is less than $350,000,000, but not less than $300,000,000, then the still higher rate in schedule C applies. And it is further provided in the act that if the fund balance falls below $300,000,000, then the highest rate, 2.7 percentum, applies to all employers. Since this case involves contribution rates for 1956, we are concerned with the fund balance on December 31, 1955, the immediately preceding calendar year.

Plaintiffs' contention essentially is that by the payment of contributions of $5,482,839.54 by approxi-

---

43 PS §753 (z. 3). The credits and charges in the employer's reserve account are based upon a compound of the individual employer's records and the record of all other employers of employment in the State. Section 302 sets forth with particularity the manner in which these credits and charges are to be computed.

Under section 301(c) of the 1955 amendment, the ratio of the balance in the employer's reserve account to his average annual payroll establishes the employer's reserve for payment of unemployment compensation. Where the reserve is highest, the rate is .5 percentum of the wages paid, the lowest rate. And the rate increases (according to the table in this section, vertical lines) as the reserve diminishes. When the reserve, as specified in this section, is lowest, the rate is 2.7 percentum, the highest rate. The rates of all employers are varied by a safety factor which is based upon the balance in the unemployment compensation fund at the end of the preceding calendar year.

mately 3,500 employers prior to December 31, 1955, the fund balance on that date was at least $350,000,-000, and that plaintiffs' contribution rates, and the rates of all employers, should be determined by the application of the rates in schedule B of the table in section 301 (c).

Defendants, on the other hand, press their contention that the prepayments of the employers' contributions in the amount of $5,482,839.54 were unacceptable for the fourth quarter of the year 1955, and that the fund balance was less than $350,000,000, viz,., $345,-101,495, and hence the higher contribution rates specified in schedule C of the table had application. Defendants contend that the contributions for the fourth quarter of 1955 should only be computed when the reports of the employers were filed with the department on or before January 31, 1956.

The case actually resolves itself into a very narrow question. Did the employers have the right to make prepayments of their contributions so as to create a fund balance as of December 31, 1955, of at least $350,-000,000? Or, on the other hand, were these prepayments acceptable only where employers' reports for the fourth quarter of 1955 were filed in January of 1956? Plaintiffs contend that the refusal of defendants to accept these advance payments was arbitrary, capricious and contrary to law. The ultimate question, then, may be stated as follows, to wit, was the action of these defendants in declaring these prepayments unacceptable in 1955, and in refusing to credit them to the 1955 fund balance, unreasonable, arbitrary and capricious? And the answer to this question must be in the negative.

We believe a full answer to plaintiffs' contention is to be found in the language of the act and the regula-

tions of the department. Section 301(*a*) of the 1955 amendment provides:

"Each employer shall pay contributions with respect to . . . calendar year . . . , at a rate equal to two and seven-tenths per centum of wages paid by him for employment: Provided, however, That such rate shall be adjusted between a minimum rate of five-tenths of one per centum and a maximum rate of two and seven-tenths per centum. . . ."

Section 304 of the Act of 1936, supra, 43 PS §784, provides:

"Each employer shall file with the department such reports, at such times, and containing such information, as the department shall require, for the purpose of ascertaining and paying the contributions required by this act."

And section 305, 43 PS §785, provides:

"Concurrently with each report, the employer shall pay to the department the amount of contributions imposed by this act for the period covered by the report; . . . ."

These three sections clearly provide that contributions by an employer are to be paid in each calendar year on the wages paid by him for employment. Section 301(*c*) imposes the duty to pay these contributions. These contributions are taxes: Department of Labor and Industry v. New Enterprise Rural Electric Cooperative, Inc., 352 Pa. 413, 415, 416 (1945); Fidelity-Philadelphia Trust Company v. Hines, 337 Pa. 48, 51 (1940); Commonwealth v. Perkins, 342 Pa. 529, 531 (1941); York School District Appeal, 367 Pa. 279 (1951).

Section 301(*c*) is the imposition section of the act. It imposes the tax upon wages at the rates and in the manner specified in that section. Section 304 states that for the purpose of ascertaining and paying

the contributions, that is the tax imposed under section 301(c), the employer shall file with the department reports containing whatever information the department shall require. And then section 305 provides that concurrently with each report, the employer shall pay the amount of contributions imposed by the act. This section clearly states that when the reports are filed the contributions must be paid.

The department, then, implemented these statutory provisions of the act by the promulgation of rule and regulation no. 6, which provides in part as follows:

"(b) Form UC-2 'Employer's Report for Unemployment Compensation,' and form UC-2a, 'Employer's Quarterly Report of Wages Paid to Each Employe,' shall be filed by each employer liable for the payment of contributions, on or before the last day of the month which immediately follows the end of the calendar quarter for which such reports are filed: . . . Form UC-2 shall be filed for each calendar quarter, whether or not the employer has paid wages during the calendar quarter. . . ."

This rule would require that for the quarter ending December 31, 1955, the report shall be filed on or before January 31, 1956. And section 305, by its express terms, requires that when the reports in January of 1956 were filed, payments were then to be made concurrently with the filing of the reports. In other words, payments were to be made at the same time the reports were filed. The express language of the statute would seem to exclude payments at any other time, and in particular this language would exclude payments made in December of 1955 for the fourth quarter of 1955. The operation of this rule and regulation would mean that the contributions for the fourth quarter of 1955 would be credited to the balance in 1956, and thereafter for the next three succeeding

quarters in 1956 contributions would likewise be credited to the 1956 fund balance.

. In attacking defendants' action as being arbitrary and capricious, plaintiffs are in effect attacking the propriety of the regulation because the regulation itself clearly permits payments only to be made concurrently with the filing of the reports in January of 1956. An examination of the Unemployment Compensation Law, and the many cases decided thereunder, reveals that there are complex administrative and accounting problems involved in its enforcement. There is nothing in this record from which we could conclude that it was in any way unreasonable for the department to set up its reporting system on a quarterly basis, beginning in January of any given year so as to include in the first report the final quarter of the preceding year.

In Hayes v. Scranton, 354 Pa. 477 (1946), the Supreme Court said ,at page 482:

". . . Only a flagrant abuse of . . . powers on the part of administrative officials in matters entrusted to them by law would move the judicial branch of the government to restrain its exercise. . . . 'Questions of policy are not submitted to judicial determination, and the courts have no general authority of supervision over the exercise of discretion which under our system is reposed in the people or other departments of government'."

And in Triolo v. Exley, 358 Pa. 555 (1948), the court said, at page 558:

". . . Only where the record clearly establishes an arbitrary, capricious or unreasonable determination or a clear violation of positive law will appellate courts interfere with the exercise of an administrative duty by officials entrusted therewith: . . ." See also Deane v. Edgeworth Borough Board of Adjustment, 172 Pa.

Superior Ct. 502, 507 (1953).; Michener Appeal, 382 Pa. 401, 409 (1955); Wilson v. Philadelphia School District, 328 Pa. 225, 239 (1937).

It seems to us on the basis of this record that by their action in refusing to depart from the requirements of the statutes and the regulation, defendants not only were not acting in an arbitrary and capricious manner, but on the contrary were acting in accordance with the law. Plaintiffs, in effect, ask the court to say that notwithstanding this regulation which requires four reports and four quarterly payments by the employers, that defendants are bound to accept five payments.

The record here shows that the amounts that were actually paid in were approximated by the employers since they overpaid the amounts due for the fourth quarter. To what extent this creates bookkeeping problems, the record does not reveal. However, the legislature must have intended the payments to have some relation to the reports, in view of the provision in section 305 that requires concurrent payment along with the filing of the report.

Paragraph 31 of the stipulation reveals this interesting fact, viz., that if schedule B is applied for 1956, as plaintiffs say it should be applied, the balance on December 31, 1956, would be $343.1 millions. Under the application of schedule C, the balance is expected to be $390.1 millions. On the other hand, the fund balance of $390.1 millions as of December 31, 1956, means that schedule B shall apply for 1957.

In the last analysis, plaintiffs' argument gets down to this, viz., that schedule B should apply in 1957 instead of in 1956. We believe that these defendants acted in accordance with the provisions of the law and the department's regulations in determining that the fund balance as of December 31, 1955, was $345,101,-

495, and that there was no caprice or abuse of discretion on their part in refusing to include in the fund balance as of December 31, 1955, payments made in that month totaling $5,482,839.54, representing payments for contributions due on wages paid during the fourth quarter of 1955.

In view of the foregoing, we make the following

### Conclusions of Law

1. The balance in the unemployment compensation fund as of December 31, 1955, was $345,101,495.

2. Contributions for the quarter ending December 31, 1955, were due in the Department of Labor and Industry concurrently with the filing of employers' reports pertaining thereto on or before January 31, 1956.

3. Prepayments of contributions for this fourth quarter of 1955 made in December of 1955 could not properly be added to the fund balance for the year ending December 31, 1955.

4. There was no abuse of discretion on the part of defendants, the officials charged with the administration of the Unemployment Compensation Law, in refusing to accept and credit to the fund balance as of December 31, 1955, checks totaling $5,482,839.54, forwarded to them in December as contributions to be paid on 1955 wages.

### Decree Nisi

And now, November 30, 1956, it is hereby ordered, adjudged and decreed that plaintiffs' complaint be and the same hereby is dismissed at the cost of plaintiffs. The prothonotary is directed to enter this decree nisi and notify the parties to this proceeding or their counsel forthwith. If no exceptions are filed within 20 days after the entry of the decree a final decree will be entered.